SAMSON TUG & BARGE, CO. INC.,

                Plaintiff,

v.

INTERNATIONAL LONGSHORE &
WAREHOUSE UNION, ALASKA
LONGSHORE DIVISION, and
ILWU UNIT 222,

                Defendants.

Case No. 3:20-cv-00108-TMB
Case No. 3:20-cv-00248-TMB
Consolidated

**ORDER ON DEFENDANTS' MOTION
TO DISMISS (DKT. 11)**

## I.    INTRODUCTION

The matter comes before the Court on Defendants International Longshore and Warehouse Union and ILWU Unit 222's (collectively, "ILWU") Motion to Dismiss (the "Motion").[1] The Motion seeks to dismiss the Petition[2] filed by Plaintiff Samson Tug and Barge Co. ("Samson") pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim.[3] The Motion was fully briefed by the Parties,[4] and the Court heard oral argument.[5] For the reasons stated below, ILWU's Motion is **GRANTED**.

---

[1] Dkts. 11 (Mtn. to Dismiss Petition to Vacate); 12 (Mem. Support of Mtn. to Dismiss).

[2] Dkt. 1 (Petition).

[3] Dkt. 11 at 1–2.

[4] Dkts. 24 (MEBA Response); 26 (Samson Response); 27 (Baggen Decl.); 28 (Royce Decl.); 46 (ILWU Consolidated Reply).

[5] Dkt. 80 (Tr. of Feb. 16, 2021 Hearing).

1

## II. BACKGROUND

The background of this case is set forth in detail in the Court's order at Docket 81 and will not be repeated here.[6]

### A. Petition to Vacate Arbitration Decision

ILWU is an unincorporated labor organization.[7] ILWU is party to a multi-employer collective bargaining agreement ("CBA") called the All Alaska Longshore Agreement ("AALA")[8] with employer Matson Navigation Company of Alaska ("Matson") and others.[9] Matson purchased the terminal at Womens Bay in 2016 or 2017, and Samson leases space from Matson at Womens Bay to conduct its operations there.[10] In February 2020, Coast Arbitrator John Kagel issued an arbitration decision (the "Decision") interpreting the AALA as requiring Matson to assign all cargo handling work at Womens Bay to ILWU.[11]

---

[6] Dkt. 81 (Order Denying Preliminary Injunction).

[7] Dkts. 1 at ¶¶ 5–6; 12 at 7–8 (Petition to Vacate).

[8] Dkt. 13 (Young Decl.); *see also* Dkt. 13-1 (AALA).

[9] Dkts. 1 at ¶¶ 6, 12–13; 1-7 (NLRB Decision, 369 NLRB No. 63, Case 19-CED-225672, 19-CD-225674) (Apr. 28, 2020). According to testimony at the February 16, 2021 Hearing, Matson is not conducting its own cargo operations out of Womens Bay Terminal and is merely acting as a landlord at this location. Dkt. 80 at 42:8-13.

[10] Dkts. 1 at ¶ 12; 12 at 12; 46 at 7 (ILWU's Consolidated Reply); 80 at 66:20-21. Matson personnel also note that after learning of the present litigation, it determined that Matson "could not get in the middle of a jurisdiction dispute, now in federal court, between ILWU and MEBA as we have bargaining relationships with both." Dkt. 64-6 at 2; *see also* Dkt. 64-6 at 28 ¶ 4 (Tungel Aff.).

[11] Dkt. 13-6 at 9–10 (Coast Arbitrator's Decision).

On May 12, 2020, Samson and MEBA filed a Petition to Vacate the Decision pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.[12]

In the Petition, Samson states it is not party to the AALA or any agreement with ILWU but is party to a CBA with Marine Engineers' Beneficial Association, AFL-CIO ("MEBA").[13] Samson argues that ILWU is attempting to force Samson to use ILWU labor in Samson's cargo handling operations at Womens Bay, "contrary to law, public policy, safe and efficient operations, and Samson's contractual obligations to its employees through its CBA" with MEBA.[14] Samson states that ILWU is also using the Decision to demand Samson use ILWU members for its other cargo operations in Kodiak, including at Pier II terminal.[15] Further, a recent decision by the National Labor Relations Board ("NLRB") granted Samson's MEBA employees the waterside cargo handling work at Pier II, and Samson argues the Coast Arbitrator's Decision conflicts with the "jurisdictional logic of the related ruling by the NLRB decision."[16] Samson also states that based on the Coast Arbitrator's Decision, ILWU has submitted time cards to Matson that "charge Matson

---

[12] Dkts. 1 at ¶¶ 1–2; 11 at 2. On October 5, 2020, Samson also filed a Complaint for Damages under Section 303 of the LMRA, 29 U.S.C. § 187 in the companion Case No. 3:20-cv-248-TMB. The Petition to Vacate involves the Decision which is the basis for the damages incurred in Case No. 3:20-cv-00248-TMB. Because the present case and the companion case are both based on the same underlying facts, and each action challenges the legality of imposing the burdens of an arbitration decision on Samson, an entity that was not party to the arbitration, the Parties' request to consolidate the cases was granted. On November 23, 2020, Case No. 3:20-cv-00248-TMB was consolidated under the present case. Dkts. 36 (Order Granting Unopposed Motion to Consolidate); 35 (Motion to Consolidate).

[13] Dkt. 1 at ¶¶ 6–7.

[14] *Id.* at ¶¶ 17–18, 26.

[15] *Id.* at ¶ 20.

[16] *Id.* at ¶¶ 21–22.

for labor hours claimed by ILWU for work done by Samson's [MEBA] represented individuals at Womens Bay[.]"[17] Further, Matson "intends to charge Samson for the time card labor hours submitted by ILWU for work done by Samson's [MEBA] represented" employees.[18] Samson argues that if the Court does not vacate the Decision and it is forced to use ILWU labor, Samson's operations at other ports will be disrupted and it will be forced to violate its obligations to Samson's Kodiak employees and their union, MEBA.[19] Samson states it has "no adequate remedy at law" and that only a decision vacating the judgment will provide Samson with the necessary relief requested.[20]

### B. Motion to Dismiss

On July 22, 2020, ILWU moved to dismiss the Petition pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).[21] In its Motion, ILWU argues Samson's claim under Section 301 should be dismissed for lack of federal subject matter jurisdiction because (1) Samson does not allege the Decision violated the AALA or federal law; and (2) Samson lacks standing to challenge the Decision because it is not a party to or the beneficiary of the CBA between ILWU and Matson.[22] Further, ILWU argues the Section 301 claim should be dismissed for failure to state a claim for relief because Samson does not allege the Decision violates the CBA or federal labor

---

[17] *Id.* at ¶ 22

[18] *Id.* at ¶ 23.

[19] *Id.* at ¶¶ 23–24.

[20] *Id.* at ¶ 27.

[21] Dkts. 11; 12.

[22] Dkts. 11 at 2; 12 at 17–22.

4

law.²³ ILWU argues Samson's claim under § 10 of the FAA fails because Samson was not a party to the underlying arbitration proceedings, Samson's claim is time barred, and Samson fails to allege any statutory basis for relief.²⁴

Samson and MEBA both filed oppositions to ILWU's Motion to Dismiss the Petition to Vacate and requested oral argument.²⁵ In its Opposition, Samson argues an unlawful arbitration decision that harms a non-participating third party may be challenged by a petition to vacate, as Samson has done here.²⁶ Samson is directly affected by the Decision and may properly challenge it as a violation of public policy and an unfair labor practice.²⁷ Samson also argues motions to dismiss are disfavored and that it has successfully stated claims upon which relief can be granted.²⁸ Specially, Samson argues it states a claim for a violation of Section 8 of the NLRA, 29 U.S.C. § 158(b)(4)(D)²⁹ because ILWU: (1) demanded Samson "use ILWU represented employees to

---

²³ Dkts. 11 at 2; 12 at 23–25.

²⁴ Dkts. 11 at 2; 12 at 25–27.

²⁵ Dkts. 24 (MEBA Opposition to ILWU Mtn. to Dismiss); 26 (Samson Opposition to Mtn. to Dismiss). After initially joining Samson in the present litigation, MEBA sought voluntary dismissal under Federal Rule of Civil Procedure 41. Dkt. 72 (MEBA's Stip. of Dismissal).

²⁶ Dkt. 26 at 8, 15–16.

²⁷ *Id.* at 8–9.

²⁸ *Id.* at 10.

²⁹ Unfair labor practices under 29 U.S.C. § 158(b)(4) include:

> to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class.²⁹

"[F]orcing or requiring any person . . . to cease doing business with any other person" in violation of 29 U.S.C. § 158(b)(4)(ii)(B), "is regarded as impermissible secondary boycotting, being

5

perform all of Samson's cargo operations at Womens Bay"; (2) "demanded Samson use ILWU represented individuals for cargo operations at other ports and locations"; (3) "pressured Samson to pay IWLU time in lieu charges for work done by Samson's MEBA represented employees at Womens Bay"; and (4) sought to "force Samson, a stranger to the arbitration, to use ILWU labor at Womens Bay and not its own employees[.]"[30] Further, Samson argues the Decision violates public policy, and the Court may not enforce, and should vacate, arbitration decisions which violate public policy.[31] Finally, Samson argues that under the FAA, a court may vacate an arbitration award "'upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award[.]'"[32] However, Samson acknowledges this arbitration was conducted pursuant to a private contract and not under 5 U.S.C. § 580 but argues that the policy considerations are nonetheless instructive, and the Court should consider the merits of Samson's petition.[33]

In opposition, MEBA argues that the arbitration award ILWU seeks to enforce "would allow the ILWU to unlawfully raid the established work jurisdiction of MEBA," an organization "that has maintained a continuous collective bargaining relationship with [Samson] for more than

---

'directed at parties who are not involved in the labor dispute.'" *NLRB v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Union, Local 433*, 891 F.3d 1182, 1184 (9th Cir. 2018) (citing *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 943 (9th Cir. 2014)). "Section 8(b)(4)(ii)(B) proscribes the creation of 'a separate dispute with the secondary employer' in order to coerce the primary employer." *Id.* (quoting *NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 72 (1964)).

[30] Dkt. 26 at 11–12.

[31] *Id.* at 11.

[32] *Id.* at 17–18 (quoting 9 U.S.C. § 10(c)).

[33] *Id.* at 17.

three decades."³⁴ MEBA was not a party to the arbitration that resulted in the Decision ILWU now seeks to impose on MEBA and its members, and the Decision effectively voids the labor contract between MEBA and Samson for the work at Womens Bay Terminal.³⁵ MEBA also argues it and Samson have a sufficient stake in the outcome of the arbitration to confer standing under Article III of the United States Constitution and Section 301.³⁶ Further, MEBA argues the Court has subject matter jurisdiction under Section 301 to consider the Petition because the Decision ILWU is seeking to enforce would directly result in a violation of federal labor law and is therefore contrary to public policy.³⁷

In reply, ILWU reiterates that Samson has failed to demonstrate standing to petition to vacate an arbitration decision that concerns Matson's obligation to ILWU at Womens Bay Terminal.³⁸ Samson is not a third-party beneficiary to the CBA between Matson and ILWU, and the Decision "is not at odds with a governing agreement or binding decision between ILWU and Samson or ILWU and MEBA."³⁹ Even if Samson has standing to petition to vacate the Decision, ILWU argues that Samson's Petition fails to state a claim because Samson does not allege facts from which the Court could reasonably infer a violation of Section 8 of the NLRA.⁴⁰ Samson has failed to allege ILWU engaged in conduct that conflicts with a work assignment order of the NLRB

---

³⁴ Dkt. 24 at 2.

³⁵ *Id.*

³⁶ *Id.* at 9.

³⁷ *Id.* at 10–11

³⁸ Dkt. 46 (Consolidated Reply).

³⁹ *Id.* at 7.

⁴⁰ *Id.* at 7, 21–25.

under NLRA § 10(k); the only NLRB order Samson cites applies to different work, with a different employer, at a different dock in Kodiak.[41] Further, ILWU argues the authority Samson cites for the proposition it has standing to challenge the Decision is not binding, and its narrow holding does not support conferring standing on Samson in this case.[42] ILWU also argues that Samson puts forth new theories in its Opposition not alleged in the Petition to Vacate; nevertheless these new theories and the original theories fail to state a claim that ILWU violated Section 8 of the NLRA because the Decision is not contrary to public policy and Samson fails to allege any legally cognizable threat, coercion or restraint by ILWU.[43]

On February 16, 2021, the Court held an omnibus hearing, during which the Parties gave oral argument regarding the Motion to Dismiss and other outstanding Motions.[44]

### III. LEGAL STANDARD

*A. Federal Rule of Civil Procedure 12(b)(1)*

ILWU moves to dismiss the Petition, in part, because it argues the Court lacks subject matter jurisdiction under Rule 12(b)(1). "[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, [courts] take the allegations in the plaintiff's complaint as true."[45] "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its

---

[41] *Id.* at 7–8.

[42] *Id.* at 9–14.

[43] *Id.* at 17–21, 25.

[44] Dkts. 78 (Minute Entry); 80.

[45] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted).

8

existence."[46] "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."[47] Moreover, a Rule 12(b)(1) jurisdictional attack may be facial or factual, depending on whether the challenger asserts that the complaint, on its face, is insufficient to invoke federal jurisdiction or whether the challenger disputes the truth of the allegations themselves.[48] For a facial attack, "'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'"[49] For a factual attack, the court may consider evidence outside the pleadings to resolve factual disputes as to jurisdiction.[50] When faced with a challenge to its subject matter jurisdiction under Rule 12(b)(1), the court must resolve that issue before determining whether the complaint states a claim under Rule 12(b)(6).[51]

    B.  *Federal Rule of Civil Procedure 12(b)(6).*

ILWU also moves under Rule 12(b)(6) to dismiss Samson's Petition for failure to state facts sufficient to support a claim for relief. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the

---

[46] *Rattlesnake Coal. v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007); *see also Alaska v. Kerry*, 972 F. Supp. 2d 1111, 1120 (D. Alaska 2013); *Alaska v. Jewell*, 4:13-cv-00034-SLG, 2014 WL 3778590, at *2 (D. Alaska July 29, 2014).

[47] *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation marks and citation omitted).

[48] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 228 F.3d 1214, 1242 (9th Cir. 2000)).

[49] *Jensen v. Locke*, No. 3:08-cv-00286-TMB, 2009 WL 10674336, *2 (D. Alaska Nov. 9, 2009) (quoting *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

[50] *See Assoc. of Am. Med. Colls. v. United States*, 217 F .3d 770, 778 (9th Cir. 2000).

[51] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

pleader is entitled to relief,"[52] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[53] In ruling on a 12(b)(6) motion, the Court must "'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[54]

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[55] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[56] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[57] So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events.[58] "'A dismissal for failure to state a claim is proper only if it appears beyond

---

[52] Fed. R. Civ. P. 8(a)(2).

[53] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[54] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

[55] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[56] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds,* 563 U.S. 713 (2011).

[57] *Iqbal*, 556 U.S. at 679 (citation omitted).

[58] *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

10

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[59]

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[60] Courts may consider additional materials where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[61]

## IV. DISCUSSION

Here, as the Court previously concluded, Samson lacks standing to petition to vacate the Coast Arbitrator's Decision and the Court lacks jurisdiction over Samson's Petition.[62] Samson does not allege a breach or violation of the AALA, the subject of the Decision. Samson is also not a party to or third-party beneficiary of the AALA, the interpretation of which it now challenges. Accordingly, ILWU's Motion to Dismiss the Petition is **GRANTED**.

### A. The Court Lacks Subject Matter Jurisdiction under Section 301 of the Labor Management Relations Act.

#### 1. Section 301 of the LMRA

In its Petition, Samson alleges that jurisdiction is conferred upon this Court by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and through 28 U.S.C. § 1337(a). Section 301(a) of the LMRA states:

> (a) Venue, amount, and citizenship
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this

---

[59] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison, & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

[60] *See id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[61] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[62] Dkt. 81 at 18–26.

11

chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[63]

"A district court only has jurisdiction to confirm, vacate or correct 'final and binding' arbitration awards under § 301 of the LMRA[.]"[64] The Ninth Circuit has repeatedly stated that "[t]o assert jurisdiction under § 301(a), a litigant must allege a breach of contract between an employer and a labor organization or between labor organizations in an industry affecting commerce."[65] While jurisdiction is conferred if a party to the contract (usually a CBA) sues, or if a third-party beneficiary sues, the Ninth Circuit has stated that jurisdiction can be conferred "even though [the party] is not a signatory to the [a]greement."[66] A Section 301 action "do[es] not necessarily have to be employers or labor organizations. The word 'between' in § 301(a) refers to 'contracts' between an employer and a labor organization, not to 'suits' between

---

[63] 29 U.S.C. § 185(a).

[64] *New United Motor Mfg., Inc. v. United Auto Workers Local 2244*, 617 F. Supp. 2d 948, 954 (N.D. Cal. 2008) (citations omitted).

[65] *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Committee of the East Bay, Inc.*, 707 F.2d 1067, 1070 (9th Cir. 1983); *see Garvey v. Roberts*, 203 F.3d 580, 587 (9th Cir. 2000) ("Jurisdiction is proper under LMRA § 301(a) where (1) the suit is based on an alleged breach of contract between an employer and a labor organization and (2) the resolution of the lawsuit is focused upon and governed by the terms of the contract."); *Nu Image, Inc., v. IATSE*, 893 F. 3d 636, 639 (9th Cir. 2018) (Section 301 "is an exception to the primary jurisdiction doctrine of the NLRB designed to afford . . . courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement. Section 301(a) is designed to allow federal courts the limited role of enforcing collective bargaining agreements.") (internal citations, alterations, and quotation marks omitted).

[66] *Painting & Decorating*, 707 F.2d at 1071; *Rehmar v. Smith,* 555 F.2d 1362, 1366 (9th Cir. 1976) ("Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer."); *Lauser v. City College of San Francisco*, No. C-07-6464 SC, 2008 WL 2357246, at *4 (N.D. Cal. June 6, 2008), *aff'd*, 359 F. App'x 755 (9th Cir. Nov. 17, 2009).

12

them."[67] However, "for jurisdiction to be proper . . . the suit [must] be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be *focused upon and governed by the terms of the contract*."[68]

### 2. Analysis of Statutory Jurisdiction

"To assert jurisdiction under § 301(a), a litigant must allege a breach of contract between an employer and a labor organization or between labor organizations in an industry affecting commerce."[69] Although Samson is an employer party to a CBA and ILWU is a "labor organization representing employees," Samson's claim is not for a violation of a contract between the two Parties.[70]

As Samson correctly pointed out at oral argument, "Section 301 jurisdiction is not dependent upon the parties to the suit, but rather the nature or subject matter of the action," and "[j]urisdiction exists as long as the suit is for violation of a contract between the union and employer, even if neither party is a union or an employer."[71] However, to meet the jurisdictional and standing requirements of Section 301, Samson must still allege a breach of the AALA.[72] It has

---

[67] *Painting & Decorating*, 707 F.2d at 1070 n.2 (citation omitted).

[68] *Id.* at 1071 (emphasis added).

[69] *Painting & Decorating*, 707 F.2d at 1070; *see Garvey*, 203 F.3d at 587 ("Jurisdiction is proper under LMRA § 301(a) where (1) the suit is based on an alleged breach of contract between an employer and a labor organization and (2) the resolution of the lawsuit is focused upon and governed by the terms of the contract.").

[70] *See* 29 U.S.C. § 185.

[71] Dkt 80 at 74:7-14; *Lauser*, No. C-07-6464 SC, 2008 WL 2357246, at *4.

[72] *Painting & Decorating*, 707 F.2d at 1071 ("All that is required for jurisdiction to be proper under § 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract.") (citation omitted). The Court also notes the cases interpreting jurisdiction under Section 301 as dependent on the dispute—and not the parties—have largely analyzed disputes

failed to do so here. Instead, Samson argues ILWU's motivation behind pursuing arbitration and the Coast Arbitrator's ultimate interpretation of the AALA amounts to an unfair labor practice. Because Samson has not alleged there was a violation of the AALA, the Court lacks jurisdiction over Samson's Section 301 claim.

B. *Samson Standing Under Section 301 of the Labor Management Relations Act.*

1. Standing Under Section 301

To invoke the jurisdiction of the federal courts, a plaintiff must demonstrate that it has Article III standing.[73] To do so, a plaintiff must show it suffered an injury-in-fact that is "both 'concrete and particularized.'"[74] In addition, this injury must be "fairly . . . traceable to the challenged action of the defendant" and redressable—"likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[75]

"To have standing to bring an action for breach of a collective bargaining agreement, a party must be either a member of the collective bargaining unit covered by the agreement or a third party beneficiary of that agreement."[76] Samson was not a party to the arbitration and is not party

---

giving rise to jurisdiction in the context of suits brought by a third-party beneficiary, which the Court already concluded Samson is not.

[73] *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 654 (9th Cir. 2011).

[74] *Id.*

[75] *Id.* at 654–55 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–611 (1992)).

[76] *Sepulveda v. PMA*, 878 F.2d 1137, 1139 (9th Cir. 1989); *see also Milne Emp. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1407 (9th Cir. 1991) ("[W]e hold that a nonsignatory to a CBA has standing to remove a case on the basis of section 301 preemption if resolution of the state law claim requires interpretation of the collective bargaining agreement."); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 699–700 (1966) (union had standing under Section 301 to sue for wages on behalf of members); *Pace v. Honolulu Disposal Serv, Inc.*, 227 F.3d 1150, 1155 (9th Cir. 2000) (concluding union members had "standing to assert claims for benefits; such claims constitute uniquely personal rights, similar to wages, conferring standing to sue under § 301"); *Bd. of Direct. of The Motion Pic. Indus.*

to the AALA. Samson has also not alleged a violation of the AALA. Instead, Samson argues that the Court should confer standing to petition to vacate the Decision by adopting the approach of a Second Circuit case, *Association of Contracting Plumbers of the City of New York v. Local Union No. 2 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada* ("*Contracting Plumbers*"),[77] and by virtue of the underlying dispute and its effects on Samson.[78]

The Court in an earlier Order set forth a summary of *Contracting Plumbers* that it will not repeat here.[79] At its core, *Contracting Plumbers* stands for the proposition that a third party not participating in an arbitration whose interests are affected "in a sufficiently substantial and concrete manner" has standing to challenge the arbitration award under Section 301(a) jurisdiction.[80] However, *Contracting Plumbers* is distinguishable from the present case in that it involved standing by a parent union with contractual relationships to its local unions to intervene under Federal Rule of Civil Procedure 24 in suit already in federal court brought by parties to the arbitration under the FAA. Additionally, not allowing the parent union to challenge the arbitration awards of its local unions undermined the policy rationale behind the parent union's existence.

---

*Pension Plan v. Oil Factory Inc.*, No. CV 15-9841-RSWL-AGRx, 2016 WL 3027337, at *3 (C.D. Cal. May 25, 2016) ("Section 301 of the LMRA has ben[sic] interpreted broadly to include suits by third party beneficiaries of an agreement between an employer and a labor organization.").

[77] 841 F.2d 461 (2nd Cir. 1988).

[78] Dkts. 48 at 19–20; 80 at 74:13-22.

[79] Dkt. 81 at 20–22.

[80] *See id.* at 466–67.

15

Case 3:20-cv-00108-TMB   Document 82   Filed 03/05/21   Page 15 of 19

*Contracting Plumbers* has been interpreted and characterized as such by district courts in the Ninth Circuit.[81] The Ninth Circuit has not adopted its rationale.

### 2. Analysis of Standing

Samson asserts it has Article III standing under Section 301 because of its "significant protected interests at stake."[82] ILWU argues that Samson lacks standing to bring petition to vacate the Coast Arbitrator's Decision under Section 301 because Samson is not a party to the AALA—the agreement between ILWU and Matson; is not a third-party beneficiary of the AALA; has no contractual relationship with ILWU; none of Samson's rights and obligations are dependent upon an interpretation of the AALA; and Samson has not alleged that the Decision violates the AALA.[83]

Although Samson initially made an argument that the Decision should be set aside under the FAA,[84] Samson has since abandoned this argument after acknowledging the FAA "does not

---

[81] *See, e.g.*, *Golden Temple of Or., LLC v. Puri*, No. 3:11–cv–01358–HZ, 2013 WL 4046326, at *4 (D. Or. Aug. 7, 2013) (describing *Contracting Plumbers'* holding that non-party with a "substantial interest in the arbitrations" could intervene as a matter of right under Rule 24(a) and noting the Ninth Circuit has not adopted this rationale); *Baseden v. Alaska*, No. 1:08-cv-00010 TMB, 2009 WL 10705049, at *3 n.13 (D. Alaska Feb. 25, 2009) (noting it was unclear whether union member had standing to vacate arbitration award in dispute brought by his union against his former employer, and citing to *Contracting Plumbers*, "'we are not persuaded by those cases which have held that an individual union member, who was not a party to the arbitration, lacked standing under § 10 to challenge the results of an arbitration between his union and his employer,'" but ultimately concluding "[i]n the absence of controlling authority from the Ninth Circuit, and any clear guidance from outside circuits, the Court declines to rest its decision on this ground.").

[82] Dkt. 26 at 3, 8, 10.

[83] Dkts. 12 at 18–23; 63 at 15.

[84] Dkt. 48 at 19–20 ("Under the [FAA]. . . . the court may vacate arbitration awards 'where the arbitrators exceeded their powers.' . . . Although the FAA does not expressly allow a non-party to the arbitration to seek to vacate an arbitration award, there are circumstances where a non-party may challenge an arbitration decision.").

Section 10 of the FAA, 9 U.S.C. § 10, sets forth the exclusive grounds to vacate an arbitration award. Section 10(a) provides:

apply to employment contracts for workers engaged in interstate commerce, which ILWU workers almost certainly are."[85]

Samson admits it is not a party to the AALA.[86] Therefore, under current law, the only possible way Samson can have standing under Section 301 is if the Court finds Samson is a third-party beneficiary to the AALA. The Court must look to state law to determine whether petitioners are third-party beneficiaries.[87] Under Alaska law, a third party is an intended beneficiary of a contract if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either; (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate

---

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

[85] Dkt. 71 at 5 ("Samson would like to correct an error in its briefing. Samson made the argument that general princip[les] of arbitration law require the petition to be vacated, citing the [FAA.] The [FAA] does not apply to employment contracts for workers engaged in interstate commerce, which ILWU workers almost certainly are. Nonetheless the same princip[les] do apply in labor law and an arbitrator may not issue an award contrary to public policy."); 9 U.S.C. § 1.

[86] *See* Dkt. 1 at ¶¶ 7, 13.

[87] *See Sepulveda*, 878 F.2d at 1139.

that the promisee intends to give the beneficiary the benefit of the promised performance."[88] Here it does not appear, and Samson does not allege, any provision of the AALA provides Samson rights or benefits. Because Samson is not a party to or beneficiary of the AALA, Samson lacks standing under Section 301.

As the Court previously stated, it finds merit to Samson's argument that Samson is substantially impacted by the Decision, as well as Samson's appeals to the Court's equitable powers to confer standing.[89] The Court also acknowledges Samson's commonsense argument that the Coast Arbitrator's interpretation of the AALA mandates an unfair labor practice and contravenes public policy, which may be enough for Samson to gain standing to challenge the Decision. However, absent more guidance from the Ninth Circuit, because Samson is not a party to or beneficiary of the AALA, the Court concludes Samson lacks standing under Section 301 to pursue this action.[90]

Accordingly, ILWU's Motion as made under Rule 12(b)(1) is **GRANTED**. Because ILWU's Motion is granted pursuant Rule 12(b)(1), the Court need not resolve whether the Petition states a claim under Rule 12(b)(6).[91]

---

[88] *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 310 (Alaska 2007) (quoting Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981)).

[89] Dkt. 81 at 25.

[90] *See id.*; Dkt. 80 at 80:7-16 (ILWU points out that Samson has not cited "a single case that says an employer who is not covered by a collective bargaining agreement has standing to petition to vacate.").

[91] *See Steel Co.*, 523 U.S. at 94–95.

## V. CONCLUSION

For the forgoing reasons, ILWU's Motion at Docket 11 is **GRANTED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 5th day of March, 2021.

<u>/s/ *Timothy M. Burgess*</u>
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE