IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SAMSON TUG & BARGE, CO. INC.,

                    Plaintiff,

      v.

INTERNATIONAL LONGSHORE &
WAREHOUSE UNION, ALASKA
LONGSHORE DIVISION, and
ILWU UNIT 222,

                  Defendants.

Case No. 3:20-cv-00108-TMB
Case No. 3:20-cv-00248-TMB
Consolidated

**ORDER ON DEFENDANTS' MOTION
TO DISMISS & MOTION TO STRIKE
(DKT. 38)**

## I.    INTRODUCTION

The matter comes before the Court on Defendants International Longshore and Warehouse Union and ILWU Unit 222's (collectively, "ILWU") Motion to Dismiss Complaint for Damages and Injunctive Relief and Motion to Strike Settlement Communication (the "Motion").[1] The Motion (1) seeks to dismiss the Complaint[2] filed by Plaintiff Samson Tug and Barge, Co., Inc. ("Samson") under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim, and (2) seeks to strike a confidential settlement communication under Federal Rule of Civil Procedure

---

[1] Dkts. 38 (Motion); 39 (Memo. in Support of Motion). At the Parties' request, the Court consolidated this case with Case No. 3:20-cv-00248-TMB. Dkts. 35 (Plaintiffs' Unopposed Motion to Consolidate); 36 (Order Granting Motion to Consolidate). ILWU's Motion is also docketed in Case No. 3:20-cv-00248-TMB, Dkt. 8.

[2] Case No. 3:20-cv-00248-TMB (filed on Oct. 5, 2020), Dkt. 1 (Complaint).

1

12(f).[3] The Motion was fully briefed by the Parties,[4] and the Court heard oral argument.[5] For the reasons stated below, ILWU's Motion is **GRANTED in part** and **DENIED in part**.

## II. BACKGROUND

The background of this case is set forth in detail in the Court's Order at Docket 81 and will not be repeated here.[6]

### A. Complaint for Damages

ILWU is an unincorporated labor organization.[7] ILWU is party to a multi-employer collective bargaining agreement ("CBA") called the All Alaska Longshore Agreement ("AALA")[8] with employer Matson Navigation Company of Alaska ("Matson") and others.[9] Matson purchased the terminal in Womens Bay in 2016 or 2017 from LASH Corporation ("LASH"), and Samson leases space from Matson at Womens Bay to conduct its operations there.[10] After Matson

---

[3] Dkt. 38.

[4] Dkts. 42 (Opposition to Motion); 46 (ILWU Consolidated Reply).

[5] Dkt. 80 (Tr. of Feb. 16, 2021 Hearing).

[6] Dkt. 81 (Order Denying Preliminary Injunction).

[7] Dkts. 1 at ¶¶ 5–6; 12 at 7–8 (Petition to Vacate).

[8] Dkt. 13 (Young Decl.); *see also* Dkt. 13-1 (AALA).

[9] Dkts. 1 at ¶¶ 6, 12–13; 1-7 (NLRB Decision, 369 NLRB No. 63, Case 19-CED-225672, 19-CD-225674) (Apr. 28, 2020).

[10] Dkts. 46 at 7 (ILWU's Consolidated Reply); 80 at 7:11-13, 66:20-21; *see also* Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶ 12. Matson personnel also note that after learning of the present litigation, it determined that Matson "could not get in the middle of a jurisdiction dispute, now in federal court, between ILWU and MEBA as we have bargaining relationships with both." Dkt. 64-6 at 2; *see also* Dkt. 64-6 at 28 ¶ 4 (Tungul Aff.). According to testimony at the February 16, 2021 Hearing, Matson is not conducting its own cargo operations out of Womens Bay Terminal and is merely acting as a landlord at this location. Dkt. 80 at 42:8-13.

2

purchased Womens Bay Terminal, it continued leasing the property to Samson under an amended month-to month lease.[11]

In its Complaint for damages, Samson argues ILWU has committed an unfair labor practice ("ULP") in violation of 29 U.S.C. § 158(b)(4)(ii)(D),[12] and that as a result, Samson is entitled to damages and injunctive relief.[13] Samson brings its Complaint under Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, and 9 U.S.C. § 10.[14]

Samson states it has operated a fleet of tugs and barges, providing service among various Alaskan ports as well as ports in Seattle, Washington, and that it has operated at Womens Bay Terminal in Kodiak for approximately forty years.[15] Samson has historically employed members of Marine Engineers' Beneficial Association, AFL-CIO ("MEBA") to work its docks, including

---

[11] Dkt. 1-3 (Agreement to Amend Lease); *cf.* Dkt. 43-1 at 6 (Lease Agreement Between Lash & Samson, August 1, 2014); Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶ 12.

[12] Although Samson cites to 29 U.S.C. § 158(b)(4)(i)(D) in its Complaint, as ILWU correctly points out (i)(D) only applies to strikes, which are not alleged in this case. *See* Dkt. 39 at 17–18, 20 n.1. Further, in Samson's Opposition to the Motion to Dismiss, it cites to 29 U.S.C. § 158(b)(4)(ii)(D). Dkt. 42 at 11, 14.

[13] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 28–34. Samson also petitioned the Court to vacate the Coast Arbitrator's Decision ("Decision"), and ILWU moved to dismiss the Petition. Dkts. 1; 11 (Motion to Dismiss Petition). The Court concluded it lacked subject matter jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to hear the Petition given that Samson did not allege a breach or violation of the AALA, the subject of the Decision. Dkts. 82 (Order Granting Motion to Dismiss Petition); 84 (Order Denying Motion for Reconsideration). The Court also concluded Samson lacked standing to bring the Petition because Samson was neither a party to the AALA nor a third-party beneficiary. Dkt. 82 at 11. Confusingly, Samson states that its Section 303 claim "flows directly from [its] Petition to Vacate Arbitration Decision claim" and that "Samson's success in that claim may cause the Coast Arbitrator's [D]ecision to be vacated" and result in Samson recovering money improperly collected by ILWU. Dkt. 42 at 14. However, the Court views Samson's Petition and its Complaint as separate claims brought under separate statutes and treats the filings as such.

[14] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 1, 28–34.

[15] *Id.* at ¶¶ 8–10.

3

at Womens Bay.[16] Samson acknowledges it is not a party to any agreements with ILWU.[17] Samson states ILWU has "made a number of demands on Samson, a stranger to the Matson-ILWU collective bargaining agreement" including to "use ILWU represented employees to perform all of Samson's cargo operations at Womens Bay . . . rather than Samson's MEBA represented employees[.]"[18] Samson alleges that "ILWU has also demanded that Matson apply the Coast Arbitrator's [D]ecision by terminating Samsons' Womens Bay lease thereby canceling Samson's occupancy of its terminal at Womens Bay if Samson does not use ILWU" members for Samson's Womens Bay operations or "pay ILWU's time in lieu charges."[19] Further, Samson alleges, ILWU has used the Coast Arbitrator's Decision "to demand Samson use ILWU" members in its cargo operations at other ports, "including the waterside operations at Pier II, a separate Kodiak terminal."[20]

Samson alleges "ILWU's time in lieu charges are improper and part of a campaign to pressure Samson to use ILWU represented labor instead of its own MEBA labor," which Samson argues is an unfair labor practice in violation of 29 U.S.C. § 158(b)(4)(ii)(D) of the LMRA.[21]

---

[16] MEBA is an unincorporated labor organization representing employees at ports and on oceangoing vessels, including Samson employees through IBU-MEBA, and party to a Collective Bargaining Agreement ("CBA") with Samson. Dkts. 1 at ¶ 4; 80 at 27:22–28:21, Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 7–8, 11–12.

[17] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶ 7.

[18] *Id.* at ¶ 17.

[19] *Id.* at ¶¶ 19, 24.

[20] *Id.* at ¶ 20.

[21] *Id.* at ¶ 34. Again, the Court notes Samson incorrectly cites to 29 U.S.C. § 158(b)(4)(i)(D).

Case 3:20-cv-00108-TMB   Document 85   Filed 04/09/21   Page 4 of 25

Samson states that an April 28, 2020 decision by the National Labor Relations Board ("NLRB") issued pursuant to § 10(k) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(k), determined the jurisdiction of the two unions, ILWU and MEBA, for work at Pier II in Kodiak ("NLRB Decision" or "§ 10(k) Award").[22] Samson notes that the NLRB Decision "grants Samson's MEBA employees the waterside cargo handling work at Pier II[.]"[23] The NLRB Decision further recognizes the "decades long history of MEBA represented employees performing cargo operations at Womens Bay" and the issues that could result from replacing MEBA members with ILWU members in Samson's ocean-going cargo handling operations.[24]

Samson alleges that using ILWU labor for Samson's cargo handling operations at Womens Bay will disrupt Samson's "operations in other ports and affect Samson's ability to safely configure, load, and stow cargo, thereby affecting the safety of Samson's ocean-going cargo operations."[25]

Samson seeks damages of at least $200,683, which represents the amount Samson has paid so far to Matson in "time in lieu" charges, and that Matson has passed on to ILWU.[26] Samson also states its remedy at law is inadequate because Samson is unable to continue paying these time in lieu charges and therefore seeks injunctive relief requiring ILWU "to cease demanding payment of these time in lieu charges."[27] Samson alleges ILWU has submitted additional time card charges

---

[22] *Id.* at ¶ 21.

[23] *Id.*

[24] *Id.*

[25] *Id.* at ¶ 18.

[26] *Id.* at ¶¶ 22–29, 10–11.

[27] *Id.* at ¶¶ 33–34.

for cargo handling work performed by Samson's MEBA employees at Womens Bay.[28] Samson alleges that the "time card sums claimed by ILWU are 290% of Samsons' actual labor expenses with its own employees."[29] Samson alleges that continuing to pay ILWU's time in lieu charges is not financially sustainable and will cripple Samson's ability to continue existing service to its main hub port at Womens Bay."[30]

### B. *Motion to Dismiss and to Strike Settlement Communication*

ILWU moves to dismiss Samson's Complaint for Damages pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that the Complaint fails to state sufficient facts to support a claim for relief.[31] ILWU argues Samson fails to allege any cognizable theory for relief under Section 303 because the Coast Arbitrator's Decision and the NLRB Decision do not conflict.[32] ILWU argues that the NLRB Decision "merely resolved a jurisdictional dispute between ILWU and another union," MEBA, "at a different, publicly-owned dock, and [the NLRB Decision] is inapplicable to the work performed at Womens Bay Terminal."[33] Even if the arbitration Decision and the NLRB Decision did conflict, "Samson fails to allege a claim against ILWU as the arbitration [Decision] applies only to Matson, who can choose to comply or pay contractual

---

[28] *Id.* at ¶ 31.

[29] *Id.*

[30] *Id.* at ¶ 32.

[31] Dkt. 38 at 2.

[32] Dkt. 39 at 7, 22–26.

[33] *Id.*

6

penalties."[34] ILWU argues Samson has no contractual obligations under the Coast Arbitrator's Decision.[35]

Further, ILWU argues that Samson fails to allege ILWU engaged in any "coercive" conduct necessary to state a claim under Section 303.[36] Nevertheless, ILWU alleges, Samson attempts to rely on a confidential settlement communication between ILWU and MEBA, which must be stricken from the record.[37]

ILWU contends that Samson improperly attached to its Complaint an email from Dennis Young of ILWU to MEBA members, which constitutes "a confidential settlement communication" in an attempt to show coercion by ILWU in violation of the NLRA, § 8(b)(4)(ii)(D).[38] ILWU argues that the attached communication "reveals an attempt to reach a resolution with MEBA in the face of [the Coast Arbitrator's] Order."[39] ILWU argues this "settlement communication" is "inadmissible under [Federal Rule of Evidence] 408" and "should be stricken and not considered."[40]

---

[34] *Id.* at 7–8, 26–29.

[35] *Id.* at 8.

[36] *Id.* at 8, 20–21.

[37] *Id.* at 8, 30–31.

[38] Dkts. 39 at 30 (citing Case No. 3:20-cv-00248-TMB, Dkt. 1-6 (Email Ex.)); 38 at 2. Samson re-attached this same email to Baggen's Declaration in support of Samson's Motion for a Preliminary Injunction. Dkt. 54-3 (Email Ex.).

[39] *Id.* at 31.

[40] *Id.*

Samson opposes ILWU's Motion, arguing that its Complaint states a properly pleaded claim for relief under Section 303 and should not be dismissed.[41] Samson argues that its Complaint is not premised on a conflict between the Coast Arbitrator's Decision and the NLRB Decision regarding the operations at Pier II in Kodiak.[42] Instead, Samson states, the NLRB Decision has been provided "only to show that Samson's claims that it needs to use its MEBA personnel for safe and efficient cargo handling on Samson's barges were established as correct after a contested 10k hearing."[43]

Samson argues its interests are affected in a "very substantial and concrete manner" because ILWU is using the arbitration Decision to pressure Matson to force Samson to pay time in lieu charges or to substitute ILWU members for Samson's MEBA employees.[44]

Samson argues it successfully states a plausible claim that ILWU is using the Coast Arbitrator's Decision "to coerce and force Samson to assign work to ILWU" and breach its obligations to MEBA.[45] Samson argues this behavior, "when coupled with a wrongful intent or objective" constitutes a ULP in violation of 29 U.S.C. § 158(b)(4)(ii), which "makes it an unfair labor practice . . . 'to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object there is[]' to force an employer to deal with a particular labor organization" that does not represent its employees.[46] Here, Samson argues,

---

[41] Dkt. 42 at 10–11.

[42] *Id.* at 12.

[43] *Id.* at 12–13 (citing Dkt. 1-7 (NLRB Decision)).

[44] *See id.* at 13–14.

[45] *Id.* at 14.

[46] *Id.* at 14–15.

8

ILWU's intent is evinced by ILWU's conduct in attempting to obtain the work historically performed by MEBA employees through coercion.[47] Samson also points to the March 5, 2020 email from Dennis Young, in which Young notes that Samson is in a "precarious month-to-month lease at Womens Bay" and "lists the options ILWU has discussed with Matson as various ways to leverage" the Coast Arbitrator's Decision to coerce Samson.[48] Samson argues this email "may reasonably interpreted as evidence of intent by ILWU to use coercion to force Samson to give in to ILWU jurisdiction in other Alaska ports and give up the then undecided Pier II NLRB 10k claim – under threat of forced use of ILWU workers at Womens Bay or termination of Samson's lease."[49]

Samson also argues that under Federal Rule of Evidence ("FRE") 408, evidence of settlement communications is inadmissible only to provide or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement.[50] Here, Samson argues, the evidence of settlement is sought for another propose: "to show intent or 'an object of' coercive activity under 29 U.S.C. § 158(b)(4)(D)."[51] Thus, Samson argues, the email communication ILWU seeks to strike is "competent and admissible evidence" that tends to support Samson's claim that ILWU used the arbitration at issue in this case "in a coercive and threatening manner, as an unfair labor practice to force Samson to use ILWU" workers instead of its MEBA employees.[52]

---

[47] *Id.* at 15.

[48] *Id.* at 15–16.

[49] *Id.* at 16–17.

[50] *Id.* at 18

[51] *Id.* at 18–19.

[52] *Id.* at 19–20 ("In the March 5, 2020 email Dennis Young 'said the quiet part out loud' by outlining ILWU's plan to use the arbitrator'[s] decision to coerce and threaten Samson with the

ILWU filed a consolidated Reply largely reiterating its arguments, including that Samson's Complaint is insufficient on its face and fails to allege ILWU violated federal labor law.[53] Additionally, ILWU argues that Samson's Opposition, which asserts new allegations, demonstrates that amendment would be futile.[54]

ILWU argues that it's submission of time cards to Matson, a signatory to the AALA along with ILWU, does not constitute coercive conduct where, as here, Matson had no legal obligation to contract with Samson and by refraining from doing so, Matson avoids a breach of its contract with ILWU.[55] Further, ILWU argues Samson does not allege ILWU engaged in conduct that violated a § 10(k) work assignment or was contrary to the reasoning of a § 10(k) work assignment.[56] ILWU also reiterates that injunctive relief is not available in suits for damages brought under Section 303.[57] Finally, ILWU again argues that Samson is attempting to use a confidential settlement communication to prove the validity of a dispute claim, a prohibited use under FRE 408, and that this email between Dennis Young and MEBA members must be stricken.[58]

---

objective of forcing Samson to give its MEBA employees' work to ILWU, not only in Womens Bay but in multiple Alaska ports.").

[53] Dkt. 46 at 7, 15.

[54] *Id.* at 15–29.

[55] *Id.* at 22–23.

[56] *Id.* at 23–24.

[57] *Id.* at 17 (citing *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 258–61, 260 n.16 (1964)).

[58] *Id.* at 26.

On February 16, 2021, the Court held an omnibus hearing, during which the Parties gave oral argument regarding the Motion to Dismiss and other outstanding Motions.[59]

### C. NLRB Decision

Separate from the underlying action, on April 28, 2020, the NLRB issued a decision pursuant to § 10(k) of the NLRA, 29 U.S.C. § 160(k).[60] In the underlying dispute, employer and party to the AALA, American President Lines, Ltd. ("APL") alleged that ILWU engaged in activity with the object of forcing APL to assign certain work to ILWU employees, rather than to employees represented by MEBA and employed by Samson.[61] Samson intervened.[62]

APL and Samson argued that there was "reasonable cause to believe that Section 8(b)(4)(D) of the [NLRA] has been violated in light of ILWU's August 9 picket of Pier II."[63]

APL previously entered into a "connecting carrier agreement" with third-party barge operator Samson to use Samson's MEBA employees to unload APL cargo to and from Samson's

---

[59] Dkts. 78 (Minute Entry); 80.

[60] *See* Case No. 3:20-cv-00248-TMB, Dkt. 1-7. Section 10(k) of the NLRA governs hearings on jurisdictional strikes, and states:

> Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed. 29 U.S.C. § 160(k).

[61] Case No. 3:20-cv-00248-TMB, Dkt. 1-7 at 1.

[62] *Id.*

[63] *Id.* at 3.

barges at Womens Bay.[64] Matson, after taking over LASH Dock at Womens Bay and becoming Samson's landlord, informed Samson that Samson could no longer handle APL cargo there.[65] APL began searching for an alternative location for its Kodiak operations and started working on an operations agreement for Pier II at the port of Kodiak.[66] While still in negotiations, APL management notified parties that it intended for Samson barges calling on Pier II to be worked on the dock side by ILWU employees and on the water side by MEBA-represented Samson employees.[67] In response, ILWU demanded that APL honor the jurisdictional terms of the AALA and stated that ILWU would not agree to non-ILWU members working any portion of APL's Pier II operations.[68] ILWU and APL proceeded to arbitration and the Alaska Arbitrator issued a decision directing ILWU to accept APL's order and dispatch workers for the Samson barge.[69] ILWU members then began picketing Pier II but dispersed following an order by the Alaska Arbitrator.[70] The parties brought the dispute before the NLRB, which determined that MEBA should continue to do the water side work related to loading and unloading APL's containers to and from Samson's barges at Pier II.[71]

---

[64] *Id.*

[65] *Id.* at 2.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 2–3.

[71] *Id.* at 3–6.

The NLRB found that MEBA-represented Samson employees had been performing the work in dispute since late 2018.[72] The NLRB concluded Samson's preference to continue using MEBA-represented employees, APL's desire to continue contracting with Samson, the parties' current assignment and past practice favored awarding the disputed work to Samson's MEBA-represented employees.[73] Further, the NLRB concluded that the relative skill and training of the employees along with the economy and efficiency of operations favored awarding the work to Samson's MEBA employees.[74]

### III. LEGAL STANDARD

*A. Federal Rule of Civil Procedure 12(b)(6)*

ILWU moves under Rule 12(b)(6) to dismiss Samson's Complaint for failure to state a claim upon which relief can be granted.[75] In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"[76] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[77] In ruling on a 12(b)(6) motion, the Court must

---

[72] *Id.* at 4.

[73] *Id.* at 5.

[74] *Id.* at 5–6.

[75] Dkt. 38 at 2.

[76] Fed. R. Civ. P. 8(a)(2).

[77] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

13

"'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[78]

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[79] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[80] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[81] So long as plaintiffs meet this standard of plausibility, their claim survives a 12(b)(6) motion even if defendants present a similarly plausible description of the disputed events.[82] "'A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[83]

---

[78] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

[79] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[80] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds* 563 U.S. 713 (2011).

[81] *Iqbal*, 556 U.S. at 679 (citation omitted).

[82] *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

[83] *Arpin*, 261 F.3d at 923 (quoting *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).

14

Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim.[84] Courts may consider additional materials where the complaint "necessarily relies" on those documents and their authenticity is not disputed.[85]

### B. Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), a court "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[86] "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."[87] "In most cases, a motion to strike should not be granted unless 'the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'"[88]

"Some courts also refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion."[89] However, even if the material is not prejudicial to the moving party, motions to strike are proper if granting the motion would make trial less complicated

---

[84] *Id.* at 925 (citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)).

[85] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citations omitted).

[86] Fed. R. Civ. P. 12(f); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012); *Lemberg v. JP Morgan Chase Bank, N.A.*, No.17-cv-05241-JSC, 2018 WL 2463214, at *3 (N.D. Cal. June 1, 2018) (noting that whether to grant a motion to strike is within the sound discretion of the district court).

[87] *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *Reddy v. Morrissey*, No. 3:18-cv-00938-YY, 2018 WL 4407248, at *2 (D. Or. Sept. 17, 2018); *Barnes v. AT&T Pension Benefit Plan-Nonbargained Prog.*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

[88] *Reddy*, No. 3:18-cv-00938-YY, 2018 WL 4407248, at *2 (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)); *Wailua Assocs. v. Aetna Cas. and Sur. Co.*, 183 F.R.D. 550, 553–54 (D. Haw. 1998)).

[89] *Platte Anchor Bolt, Inc.*, 352 F. Supp. 2d at 1057 (citation omitted).

or otherwise streamline the ultimate resolution of the action.[90] Courts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of FRE 408.[91]

## IV.    DISCUSSION

Here, the Court concludes Samson has plausibly alleged an unfair labor practice in violation of 29 U.SC. § 158(b)(4)(ii)(D). Further, the Court concludes that striking the email communication from Dennis Young is not appropriate at this juncture. However, because Samson brings this action under Section 303, which provides solely for damages and not injunctive relief, Samson's claim for injunctive relief is dismissed. Accordingly, ILWU's Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to 12(f) is **GRANTED in part** and **DENIED in part**.

A.  *Section 303 of the Labor Management Relations Act.*

Section 303 of the LMRA, under which Samson brings its Complaint for damages, states:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the

---

[90] *Brown*, 913 F. Supp. 2d at 888 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

[91] *See Stewart v. Wachowski*, No. CV-03-2873 MMM (VBKx), 2004 WL 5618386, at *2 (C.D. Cal. Sept. 28, 2004); *Jones v. Metro. Life Ins. Co*., No. C–08–03971–JW (DMR), 2010 WL 4055928, at *14 (N.D. Cal. Oct. 15, 2010) ("[U]nder Federal Rule of Civil Procedure 12(f), courts have granted motions to strike references to settlement negotiations even at the pleadings stage of a case, on the basis that the contents of settlement discussions would otherwise be inadmissible under Federal Rule of Evidence 408 and are therefore immaterial and potentially prejudicial.").

16

amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.[92]

Section 303 provides a private right of action for compensatory damages to a party injured by reason of "a union's unfair labor practices" under NLRA § 8(b)(4).[93] Unfair labor practices by a union include:

> to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class.[94]

The Ninth Circuit has also noted that, "[i]n rare cases, [a] union can commit a predicate unfair labor practice through its conduct in an arbitration proceeding."[95] In such cases, "[t]he Section 8(b)(4) violation occurs the moment the union pursues arbitration with an unlawful secondary motive."[96] As this Court previously described:

> A union's pursuance of a grievance through arbitration can be considered coercive under section 8(b)(4) if that grievance is based on an interpretation of a collective bargaining agreement that furthers an unlawful object. That is, it is coercive if a union pursues an interpretation of a collective bargaining agreement in arbitration that promotes secondary union activity and not primary work preservation activity. The court applies a two-part test when determining whether an agreement is a lawful work preservation agreement: (1) the union's objective must be the preservation of work traditionally performed by employees represented by the

---

[92] 29 U.S.C. § 187.

[93] *Am. Pres. Lines, Ltd. v. ILWU, AKLD*, 721 F.3d 1147, 1153, 1156 (9th Cir. 2013); 29 U.S.C. § 187; *see also ILWU v. ICTSI Oregon, Inc.*, 932 F. Supp. 2d 1181, 1192 (D. Or. 2013) ("Section 303 'authorizes a private damages action for an employer who has been injured by a union's unfair labor practice.'") (quoting *Summit Valley Indus. Inc. v. Local 112, United Broth. of Carpenters & Joiners of Am.*, 456 U.S. 717, 722 (1982)).

[94] 29 U.S.C. § 158(b)(4)(ii)(D).

[95] *Am. Pres. Lines, Ltd.*, 721 F.3d at 1149.

[96] *Id.* at 1155.

union; and (2) the contracting employer must have the power to give the employees the work in question.[97]

### B. Samson has Sufficiently Stated a Claim for an Unfair Labor Practice in Violation of the NLRA

Samson alleges that following the Coast Arbitrator's Decision, ILWU has made a number of demands on Samson, including pressuring Samson to use ILWU represented individuals for cargo operations at Womens Bay and Pier II.[98] Further, Samson alleges ILWU has demanded Matson, Samson's landlord, cancel Samson's lease at Womens Bay if Samson does not use ILWU represented individuals for its Womens Bay operations.[99] These actions, Samson argues, are a ULP and an attempt to force an employer to negotiate with or work with a particular labor organization that does not represent its employees.[100] ILWU argues that Samson has failed to state a claim and dismissal is appropriate pursuant to Rule 12(b)(6).[101] Specifically, ILWU argues the Coast Arbitrator's Decision is not in conflict with or beyond the scope of the NLRB Decision, ILWU did not engage in a ULP in pursuing contractual remedies against an employer who can comply with the arbitration Decision, and Samson has failed to allege ILWU acted contrary to a § 10(k) award or otherwise engaged in coercive conduct.[102]

---

[97] *Am. Pres. Lines, Ltd. v. ILWU*, 997 F. Supp. 2d 1037, 1043 (D. Alaska 2014) (citations omitted) (analyzing a claim for alleged unfair labor practices brought under Sections 8(b)(4)(ii)(A) & (B)).

[98] *See* Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 14–29; *see also* Dkt. 42 at 10–18.

[99] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶ 19; *see also* Dkt. 42 at 10–18.

[100] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 28, 34; Dkt. 42 at 15.

[101] Dkts. 38 at 2 (internal quotation marks omitted); 39 at 22–31; 46 at 21–24.

[102] Dkts. 38 at 2; 39 at 22–31; 80 at 62:16–63:25.

18

As a threshold matter, there is no dispute that Samson, despite not being a party to the Coast Arbitrator's Decision it challenges, has standing under Section 303 to bring a claim for damages against ILWU.[103] Further, based on Samson's allegations, Samson appears to be an intended beneficiary of the protection afforded by Section 8(b)(4).[104] The Court and Parties also agree that the NLRB Decision involved separate parties at a separate location and there is no direct conflict between NLRB Decision and Coast Arbitrator's Decision; therefore, the Court need not analyze or evaluate the NLRB's supremacy in this matter.[105]

Construing Samson's allegations as true at this stage, at its heart, this appears to be a jurisdictional dispute between work allocated to two unions, ILWU and MEBA, and an attempt by ILWU to exert leverage over Samson to cooperate at another location, Pier II, and use ILWU labor. The Court concludes Samson can state a claim for a ULP on the basis that ILWU pursued an arbitration decision for an unlawful purpose.[106] While the Court agrees with ILWU that its contractual claims involving Matson and the jurisdictional dispute at the center of the NLRB

---

[103] *See* Dkts. 46 at 18; 80 at 80:12-21 (counsel for ILWU noting that "anyone who is injured by reasons of an unfair labor practice can make a claim for damages, solely damages[.]"); *see also Am. Pres. Lines, Ltd.*, 721 F.3d at 1153.

[104] *See ILWU v. NLRB*, 978 F.3d 625, 633 (9th Cir. 2020) ("Congress enacted the ULP provisions in [§] 8(b)(4) of the NLRA, 29 U.S.C. § 158(b)(4), to protect 'neutral employer[s]' caught between competing unions.") (quoting *Nat'l Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 625–26 (1967)); *see also Nat'l Woodwork Mfrs. Ass'n*, 386 U.S. at 627 (A "neutral employer" is one "not concerned with a primary labor dispute[.]").

[105] *See Sea-land Serv., Inc. v. ILWU, Locals 13, 63 & 94*, 939 F.2d 866, 872–73 (9th Cir. 1991); *George Day Constr. Co. v. United Bhd. of Carpenters & Joinders of Am., Local 354*, 722 F.2d 1471, 1477 (9th Cir 1984); *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1275 (9th Cir.), *op. mod. on den. of reh'g* (9th Cir. 1984); *see also* Dkt. 46 at 20–21; Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 20–21.

[106] *See Am. Pres. Lines, Ltd.*, 721 F.3d at 1149, 1155.

Decision are distinct,[107] that distinction on its face does not automatically mean Samson will be unable to prevail on its ULP claim.[108] Further, even though Matson could comply with the Coast Arbitrator's Decision and has the right under its lease agreement "to impose virtually any restrictions or requirements it wants" or to terminate Samson's lease,[109] Matson's ability to comply does not mean that Samson's claim must fail as a matter of law.

Further, although ILWU is correct that the NLRB has jurisdiction under § 10(k) of the NLRA to hear an unfair labor practice charged under § 8(b)(4)(D),[110] the language of 29 U.S.C. § 158(b)(4)(ii)(D) does not limit the avenues for such grievances. Section 303 provides concurrent jurisdiction to this Court to hear Samson's claims.[111]

At this stage, the Court accepts all factual allegations of the complaint as true and draws all reasonable inferences in favor of Samson.[112] Samson has alleged sufficient facts that ILWU "threaten[ed], coerce[d], or restrain[ed]" Samson where "an object thereof" was "forcing or requiring any employer to assign particular work to employees in a particular labor

---

[107] *See* Dkt. 39 at 28.

[108] *See Arpin*, 261 F.3d at 923 ("A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal quotation marks and citation omitted).

[109] *See id.* at 28–29.

[110] *Pac. Maritime Ass'n v. NLRB*, 827 F.3d 1203, 1206 (9th Cir. 2016) ("[T]he Board is directed 'to hear and determine the dispute out of which such unfair labor practice shall have arisen.'") (quoting 29 U.S.C. § 160(k)); *see also* Case No. 3:20-cv-00248-TMB, Dkt. 1-7 at 3 ("The Board may proceed with a determination of a dispute under Section 10(k) . . . if there is reasonable cause to believe that Section 8(b)(4)(D) has been violated.").

[111] *See* 29 U.S.C. § 187.

[112] *Arpin*, 261 F.3d at 923 (internal quotation marks and citation omitted).

20

organization . . . rather than to employees in another labor organization[.]"[113] Specifically, Samson has alleged that ILWU pursued arbitration with the purpose of coercing or pressuring Samson to use ILWU-represented employees in Samson's operations. Further, Samson, in paying "time in lieu" charges on top of its labor costs to MEBA, has sufficiently alleged a financial injury that "is directly tied to the nature of the alleged statutory violations."[114]

The Court concludes Samson has stated claim for damages that plausible on its face.[115] Accordingly, ILWU's Motion as made under Rule 12(b)(6) to dismiss Samson's Complaint for damages is **DENIED**.

### C. Section 303 Does not Provide for Injunctive Relief

"[A]n employer cannot seek injunctive relief from a secondary boycott under [S]ection 303; only damages are available."[116] More generally, "the NLRA does not permit employers to seek injunctions against the activity that it does prohibit. It grants to the . . . NLRB[] exclusive authority to seek injunctions against some forms of secondary activity."[117] Therefore, "congressional policy, as expressed in the NLRA, remains that employers are not permitted to

---

[113] *See* 29 U.S.C. § 158(b)(4)(ii)(D); *Am. Pres. Lines, Ltd.*, 721 F.3d at 1153.

[114] *See Am. Pres. Lines, Ltd.*, 721 F.3d at 1154.

[115] *See Iqbal*, 556 U.S. at 677–78 (quotation marks omitted).

[116] *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997) (citing *Burlington N. R.R. v. Bhd. of Maintenance of Way Emp.*, 481 U.S. 429, 448 (1987)); *Cal. Ass'n of Emp. v. Building & Constr. Trades Council of Reno*, 178 F.2d 175, 178 (9th Cir. 1949) ("The [LMRA] did not give private litigants the right to obtain injunctive relief even in those situations where a suit for damages was allowed.").

[117] *Burlington N. R.R.*, 481 U.S. at 448 (citing 29 U.S.C. § 158(b)(4), 160(j), 160(l)).

21

obtain injunctions of secondary activity."[118] Section 303 has been interpreted as providing exclusively for damages as a remedy, and not injunctive relief.[119]

As the Court previously concluded, "the only remedy under LMRA Section 303, 29 U.S.C. § 187, is compensatory damages[.]"[120] Moreover, ILWU, argues, and Samsons does not contest, that Section 303 does not allow for injunctive relief.[121] Accordingly, insofar as Samson seeks injunctive relief in its Complaint against ILWU, ILWU's Motion to Dismiss is **GRANTED**.[122]

### D.  Striking Confidential Settlement Communications

---

[118] *Id.*

[119] *See, e.g.*, *San Antonio Cmty. Hosp.*, 125 F.3d at 1235; *Adobe Drywall, L.L.C. v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, No. CV-08-2105-PHX-SRB, 2009 WL 10707035, at *5 (D. Ariz. Feb. 5, 2009) ("[T]he Court may not order injunctive relief pursuant to § 303[.]");  *Adobe Drywall, L.L.C. v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, No. CV-08-2105-PHX-SRB, 2009 WL 10707036, at *5 (D. Ariz. July 10, 2009) (An "employer cannot seek injunctive relief from a secondary boycott under section 303; only damages are available.' . . .  Therefore, Adobe cannot obtain injunctive relief on the basis of its claims that Defendants engaged in unfair labor practices under § 158(b)(4).")).

[120] Dkt. 81 at 10 (Order Denying Preliminary Injunction)

[121] Dkts. 63 at 13–15; 80 at 92:17-21 ("[U]nder Section 303, the Ninth Circuit held in *San Antonio Community Hospital* and also *California Association of Employers* that 303 is not a basis for preliminary injunction. Full stop at that point. There is no basis under [Section] 303."); 71 at 2.

[122] Because the Court dismisses Samson's claim for injunctive relief, the Court need not decide whether Matson is a necessary party for purposes of this Order. However, the Court notes this as an issue that may require resolution. *See E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 783 (9th Cir. 2005) ("[B]y definition, [necessary] parties to be joined under Rule 19 are those against whom no relief has formally been sought but who are so situated as a practical matter as to impair either the effectiveness of relief or their own or present parties' ability to protect their interests.") (internal quotation marks, alterations, and citation omitted); Fed. R. Civ. P. 19; *see also* Dkts. 81 at 28–29 ("Although Samson may be correct that Matson need not be part of the litigation for the Court to resolve the ultimate issue of whether ILWU engaged in unfair labor practices, it appears Matson is necessary for the equitable relief Samson seeks."); 42 at 8, 14 (Samson states that "Matson has required that Samson look to ILWU and not Matson for compensation in the event a court determines these time in lieu charges are improper."); 43 (Baggen Decl.).

ILWU also moves pursuant to Rule 12(f) and FRE 408 to strike an email communication between Dennis Young of ILWU and MEBA personnel regarding Matson and Samson's ongoing discussions following the Coast Arbitrator's Decision.[123] Under FRE 408:

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

However, a court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."[124]

Two principles underlie FRE 408: "(1) [t]he evidence [of compromise] is irrelevant, since the offer may be motivated by desire for peace rather than from any concession of weakness of position," and "(2) [a] more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes."[125] FRE 408's prohibition on evidence of comprise to provide liability or invalidity of a claim also applies to cases in which the party seeking to introduce evidence of the compromise was not involved in the original compromise.[126]

---

[123] Dkts. 38 at 2; 39 at 19, 30–31; 46 at 26; Case No. 3:20-cv-00248-TMB, Dkt. 1-6.

[124] Fed. R. Evid. 408(b).

[125] Fed. R. Evid. 408 advisory committee's notes to 1972 proposed rules; *see also Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213–14 (9th Cir. 1990).

[126] *Hudspeth*, 914 F.2d at 1213.

Here, the communication ILWU seeks to strike under Rule 12(f) and exclude under FRE 408 is an email between ILWU leadership, Dennis Young, and MEBA members notifying MEBA that ILWU prevailed in an arbitration dispute against Matson for failure to hire ILWU members.[127] Young further notifies MEBA members that Matson met with Samson and presented three options under which Matson and Samson could proceed that honored the result of the arbitration award.[128] ILWU offers to discuss the "Employer driven problem" further with MEBA.[129]

The Parties do not dispute this email constitutes a settlement communication, only whether the communication is subject to exclusion. However, it is not clear to the Court that the communication between Young and MEBA members is a settlement communication under FRE 408. Samson includes the email as evidence of ILWU's coercion and threats toward MEBA and Samson—not to prove or disprove the validity or amount of a disputed claim.[130] Moreover, Rule 12(f) is a harsh and disfavored remedy. Given the early stage of this litigation, the Court declines to resolve the relevance of the attached email communication or whether its contents falls within the scope of FRE 408.[131] The Court is also unpersuaded that striking the allegations will streamline the litigation.[132] Thus, the Motion to Strike is **DENIED** without prejudice.

---

[127] Dkt. 1-6 at 1.

[128] *Id.*

[129] *Id.*

[130] *See* Fed. R. Evid. 408(a). It is too premature to know whether Samson would seek to introduce the email for impeachment purposes. *See id.* Further, MEBA is no longer a party this to action. Dkt. 72 (MEBA Stip. re Voluntary Dismissal).

[131] *See, e.g.*, *Ocean Garden Prod. Incorp. v. Blessings Incorp.*, No. CV-18-00322-TUC-RM, 2019 WL 396873, at *1 (D. Ariz. Jan. 29, 2019).

[132] *See, e.g.*, *Koninklijke Philip Electronics N.V. v. Nat. Film Labs. Inc.*, CV-12-4576 GAF (FFMx), 2012 WL 12886833, at *4 (C.D. Cal. Dec. 4, 2012).

Accordingly, ILWU's Motion pursuant to Rule 12(b)(6) is **GRANTED in part** and **DENIED in part**.

## V.    CONCLUSION

For the forgoing reasons, ILWU's Motion at Docket 38 is **GRANTED in part** and **DENIED in part**. Pursuant to Rule 12(a)(4)(A), ILWU shall file its Answer to Samson's Complaint within fourteen (14) days of this Order's issuance.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 9th day of April, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE