IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAMSON TUG & BARGE, CO. INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL LONGSHORE & WAREHOUSE UNION, ALASKA LONGSHORE DIVISION, and ILWU UNIT 222, <br><br> Defendants. | Case No. 3:20-cv-00108-TMB <br> Case No. 3:20-cv-00248-TMB <br> Consolidated <br><br> **ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION** <br> **(DKT. 86)** |

## I. INTRODUCTION

The matter comes before the Court on Defendants International Longshore and Warehouse Union, Alaska Longshore Division and ILWU Unit 222's (collectively "ILWU") Motion for Reconsideration (the "Motion").[1] ILWU asks the Court to reconsider its Order Granting in part and Denying in part ILWU's Motion to Dismiss Plaintiff Samson Tug and Barge, Co. Inc.'s ("Samson") Complaint for Damages and to Strike Settlement Communications.[2] Samson opposes the Motion.[3] Oral argument has not been requested and is not deemed necessary. For the reasons discussed below, the Motion for Reconsideration is **DENIED**.

---

[1] Dkt. 86 (Motion).

[2] *Id.* at 3; Dkts. 85 (Order on ILWU's Motion to Dismiss Complaint); 38 (Motion to Dismiss & Strike).

[3] Dkts. 87 (Text Order); 98 (Opposition).

1

## II. BACKGROUND

The background of this case is set forth in great detail at Dockets 81 and 82 and will not be repeated here.[4]

### A. Motion to Dismiss and Strike

In its Complaint for Damages, Samson argues ILWU committed an unfair labor practice ("ULP") in violation of 29 U.S.C. § 158(b)(4)(ii)(D),[5] and that as a result, Samson is entitled to damages and injunctive relief.[6] Samson brings its Complaint under Section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, and 9 U.S.C. § 10.[7]

On October 21, 2020, ILWU moved to dismiss Samson's Complaint for Damages pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the grounds that the Complaint fails to state sufficient facts to support a claim for relief.[8] ILWU argued Samson fails to allege any cognizable theory for relief under Section 303 because the Coast Arbitrator's Decision and the

---

[4] Dkts. 81 (Order Denying Preliminary Injunction); 82 (Order on ILWU's Motion to Dismiss Petition); *see also* Dkt. 85.

[5] Although Samson cites to 29 U.S.C. § 158(b)(4)(i)(D) in its Complaint, as ILWU correctly points out (i)(D) only applies to strikes, which are not alleged in this case. *See* Dkt. 39 at 17–18, 20 n.1 (Memorandum in Support of Motion to Dismiss & Strike). Further, in Samson's Opposition to the Motion to Dismiss, it cites to 29 U.S.C. § 158(b)(4)(ii)(D). Dkt. 42 at 11, 14 (Opposition to Motion to Dismiss & Strike).

[6] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 28–34 (Complaint). Samson also petitioned the Court to vacate the Coast Arbitrator's Decision ("Decision"), and ILWU moved to dismiss the Petition. Dkts. 1; 11 (Motion to Dismiss Petition). The Court concluded it lacked subject matter jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to hear the Petition given that Samson did not allege a breach or violation of the AALA, the subject of the Decision. Dkts. 82 (Order Granting Motion to Dismiss Petition); 84 (Order Denying Motion for Reconsideration). The Court also concluded Samson lacked standing to bring the Petition because Samson was neither a party to the AALA nor a third-party beneficiary. Dkt. 82 at 11.

[7] Case No. 3:20-cv-00248-TMB, Dkt. 1 at ¶¶ 1, 28–34.

[8] Dkt. 38 at 2.

National Labor Relations Board ("NLRB" or "the Board") Decision do not conflict.[9] ILWU argued that the NLRB Decision "merely resolved a jurisdictional dispute between ILWU and another union," Marine Engineers' Beneficial, AFL-CIO ("MEBA"), "at a different, publicly-owned dock, and [the NLRB Decision] is inapplicable to the work performed at Womens Bay Terminal."[10] Even if the arbitration Decision and the NLRB Decision did conflict, ILWU argued "Samson fails to allege a claim against ILWU as the arbitration [Decision] applies only to Matson, who can choose to comply or pay contractual penalties."[11] ILWU argued Samson has no contractual obligations under the Coast Arbitrator's Decision.[12]

Further, ILWU argued that Samson fails to allege ILWU engaged in any "coercive" conduct necessary to state a claim under Section 303.[13] ILWU also alleged Samson impermissibly attempts to rely on a confidential settlement communication between ILWU and MEBA.[14] ILWU contended that Samson improperly attached to its Complaint an email from Dennis Young of ILWU to MEBA members, which constitutes "a confidential settlement communication" in an attempt to show coercion by ILWU in violation of the National Labor Relations Act ("NLRA") § 8(b)(4)(ii)(D).[15] ILWU argued that the attached communication "reveals an attempt to reach a

---

[9] Dkt. 39 at 7, 22–26 (citing NLRB Decision, 369 NLRB No. 63, Case 19-CED-225672, 19-CD-225674) (Apr. 28, 2020)).

[10] *Id.*

[11] *Id.* at 7–8, 26–29.

[12] *Id.* at 8.

[13] *Id.* at 8, 20–21.

[14] *Id.* at 8, 30–31.

[15] *Id.* at 30 (citing Case No. 3:20-cv-00248-TMB, Dkt. 1-6 (Email Ex.)); Dkt. 38 at 2. Samson re-attached this same email to Baggen's Declaration in support of Samson's Motion for a Preliminary Injunction. Dkt. 54-3 (Email Ex.).

3

resolution with MEBA in the face of [the Coast Arbitrator's] Order."[16] ILWU argued this "settlement communication" is "inadmissible under [Federal Rule of Evidence] 408" and "should be stricken and not considered."[17]

ILWU filed a consolidated Reply largely reiterating its arguments.[18] ILWU argues that it's submission of time cards to Matson, a signatory to the All Alaska Longshore Agreement ("AALA") along with ILWU, does not constitute coercive conduct where, as here, Matson had no legal obligation to contract with Samson and by refraining from doing so, Matson avoids a breach of its contract with ILWU.[19] Further, ILWU argued Samson does not allege ILWU engaged in conduct that violated a NLRA, 29 U.S.C. § 160(k) ("§ 10(k)")[20] work assignment or was contrary to the reasoning of a § 10(k) work assignment.[21]

---

[16] *Id.* at 31.

[17] *Id.*

[18] Dkt. 46 at 7, 15 (ILWU Consolidated Reply to Motion to Dismiss Complaint & Strike and Motion to Dismiss for Lack of Jurisdiction).

[19] *Id.* at 22–23.

[20] Section 10(k) of the NLRA governs hearings on jurisdictional strikes, and states:

> Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed. 29 U.S.C. § 160(k).

[21] *Id.* at 23–24.

On February 16, 2021, the Court held an omnibus hearing, during which the Parties gave oral argument regarding the Motion to Dismiss and other outstanding motions.[22]

The Court then issued an Order granting in part and denying in part ILWU's Motion to Dismiss.[23] The Court noted that "there is no dispute that Samson, despite not being a party to the Coast Arbitrator's Decision it challenges, has standing under Section 303 to bring a claim for damages against ILWU."[24] The Court further reasoned that based on Samson's allegations, "Samson appears to be an intended beneficiary of the protection afforded by Section 8(b)(4)."[25] The Court noted that the heart of the present dispute "appear[ed] to be a jurisdictional dispute between work allocated to two unions, ILWU and MEBA, and an attempt by ILWU to exert leverage over Samson to cooperate at another location, Pier II, and use ILWU labor."[26] Construing Samson's allegations as true at this stage in the ligation, the Court concluded Samson plausibly stated "a claim for a ULP on the basis that ILWU pursued an arbitration decision for an unlawful purpose."[27]

B. *ILWU's Motion for Reconsideration*

On April 16, 2021, ILWU filed the present Motion for Reconsideration under Federal Rule of Civil Procedure ("Rule") 54(b).[28] ILWU asks the Court to reconsider its Order denying in part

---

[22] Dkts. 78 (Minute Entry); 80 (Oral Arg. Tr.).

[23] Dkt. 85.

[24] *Id.* at 19.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Dkt. 86.

ILWU'S Motion to Dismiss because, ILWU argues, the Court "erroneously applied the standard for coercion under NLRA § 8(b)(4)(ii)(A) and (B)" rather than "NLRA § 8(b)(4)(ii)(D)."[29]

> ILWU argues that
>
> While a union may commit an unfair labor practice under NLRA § 8(b)(4)(ii)(A) or (B) by filing and processing a contractual grievance that is both objectively and subjectively baseless . . . or has an unlawful object, a union does not violate NLRA § 8(b)(4)(ii)(D) by filing "arguably meritorious work assignment grievances prior to the issuance of the Board's [§] 10(k) determination."[30]

Likewise, ILWU argues, the NLRB "has consistently dismissed unfair labor practice charges for lack of merit under NLRA § 8(b)(4)(ii)(D) where the only conduct alleged is the filing and prosecution of arguably meritorious contract grievances prior to the issuance of a contrary NLRA [§] 10(k) award."[31] ILWU argues it filed and successfully prosecuted a meritorious work assignment grievance against Matson, and there is no NLRB decision or § 10(k) determination "assigning the work awarded to ILWU in arbitration to another Union."[32] Therefore, ILWU argues, the Court's conclusion that Samson is able to state a claim for an ULP under NLRA § 8(b)(4)(ii)(D) on the basis that ILWU pursued an arbitration decision for an unlawful purpose

---

[29] *Id.* at 3.

[30] *Id.* at 3–5 (quoting *Longshoremen ILWU Local 7 (Ga.-Pac.)*, 291 N.L.R.B. 89, No. 19-CD-415, (Sept. 30, 1988), *aff'd sub nom.*, *Ga.-Pac Corp. v. N.L.R.B.*, 892 F.2d 130 (D.C. Cir. 1989) (hereinafter "*Ga.-Pac.*")).

[31] *Id.* at 6 (citing *Union Mine Workers (Stag Constr. Co.)*, Nos. 6-CD899 (1-3), 1994 WL 329400, at *2 (N.L.R.B. June 30, 1994)).

[32] *Id.* at 7 (citation omitted).

"erroneously applied the governing law."[33] ILWU asks the Court to revise its prior order and to dismiss Samson's remaining claims.[34]

C. *Samson's Opposition*

In opposition, Samson reasserts that Section 303 of "creates a private right of action for someone injured by an unfair labor practice, completely independent of any action by NLRB" and that "[u]nfair labor practices include coercing an employer to assign work to employees in one union rather than to employees in another union."[35] Samson argues ILWU is incorrect in its argument that absent a contrary § 10(k) award, ILWU's tactics cannot be considered coercive.[36] Samson further argues that "ILWU's coercion comes not from filing the grievance, but from its attempts to have Matson force Samson to hire ILWU workers."[37]

Samson argues that ILWU's reliance on *Ga.-Pac* is misplaced.[38] Samson argues first that the decision in *Ga.-Pac* centers on whether, after the initiation of a § 10(k) proceeding, grievances filed by a union prior to the § 10(k) determination can be considered coercion.[39] Here, Samson points out, there is no § 10(k) proceeding or award; instead, Samson has brought a suit for damages under Section 303.[40] Second, Samson argues, the policy strongly encouraging "private resolution

---

[33] *Id.* at 3 (citing Dkt. 85 at 17–19).

[34] *Id.* at 3, 7.

[35] Dkt. 98 at 2.

[36] *Id.* at 2–3.

[37] *Id.*

[38] *Id.* at 3.

[39] *Id.* at 4.

[40] *Id.*

7

that is baked into [[§] 10(k) proceedings is not part of [Section] 303."[41] Third, Samson notes that in *Ga.-Pac.*, ILWU filed a grievance seeking time in lieu payments from its own employer and did not seek to force another employer to replace its work force, as it is doing here.[42] Samson notes that "[t]ime in lieu payments from a signatory to [a collective bargaining agreement] is something an arbitrator can actually award."[43] By contrast, here, "ILWU filed a grievance seeking and receiving an award that would force Matson to bar Samson from operating its own equipment on its own leased property as it had done for decades."[44] Samson argues "[n]ot only is this direct coercion rather than indirect economic pressure, such an award is beyond the authority of an arbitrator to impose" and "violates the most fundamental tenant—that an award cannot be imposed on a party that did not agree to arbitrate[.]"[45] Further, Samson argues ILWU "took actions outside of the arbitration with the same unlawful objective of coercing Samson" including threatening Samson into (1) "recognizing ILWU jurisdiction in a number of unrelated facilities"; (2) "replacing its MEBA employees with ILWU employees"; or (3) "paying hundreds of thousands of dollars of time in lieu on threat of eviction."[46]

Finally, Samson argues there are factual issues that preclude dismissal.[47] Samson argues that what constitutes coercion—including whether ILWU's activity is permissible primary activity

---

[41] *Id.* at 4, 6.

[42] *Id.* at 7.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 7–8.

[46] *Id.* at 8.

[47] *Id.*

or prohibited secondary activity—is an inherently factual inquiry.[48] Dismissal requires ILWU to demonstrate that under no circumstances can Samson obtain the relief it seeks, and Samson argues it has alleged sufficient facts to show that ILWU has used coercion to attempt to force Samson to replace MEBA employees with ILWU employees.[49] Samson argues these facts, if proven, entitle Samson to a damage award under Section 303, and the Court should therefore deny ILWU's Motion.[50]

### III. LEGAL STANDARD

Reconsideration is "an extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources."[51] Under Alaska Local Civil Rule ("Local Rule" or "L.R.") 7.3(h)(1)(B), "[a] court will ordinarily deny a motion for reconsideration absent a showing of . . . manifest error of the law or fact[.]"[52]

---

[48] *Id.* at 8–10.

[49] *Id.* at 9–10.

[50] *Id.* at 10.

[51] *Blakney v. Prasad*, No. 3:18-cv-00098-TMB, 2019 WL 3253961, at *1 (D. Alaska July 19, 2019) (citation and internal quotation marks omitted); *First Student, Inc. v. Int'l Brotherhood of Teamsters, Local 959*, No. 3:18-cv-00305-SLG, 2019 WL 5026351, at *1 (D. Alaska Oct. 8, 2019).

[52] D. Alaska L. Civ. R. 7.3(h)(1)(A); *Alexie v. Hageland Aviation*, No. 4:07–cv–0031–RRB, 2008 WL 6984137, at *1 (D. Alaska Feb. 25, 2008) ("District of Alaska Local Rule[s] [] do[] not establish a standard for granting or denying motions for reconsideration. However, as a question of judicial efficiency, motions for reconsideration should only be sought or granted if the court has overlooked a material fact, misconceived a principle of law directly bearing upon the litigated issue, or if the court's initial decision was clearly erroneous or presents the risk of committing a manifest injustice."); *Givens v. Oenga*, No. 3:21-cv-0008-HRH, 2021 WL 2942756, at *1 (D. Alaska July 13, 2021).

## IV. ANALYSIS

ILWU moves, pursuant to Rule 54(b),[53] for reconsideration of the Court's Order granting in part and denying in part ILWU's Motion to Dismiss and Motion to Strike.[54] ILWU does not specify under which prong of Local Rule 7.3(h)(1) it brings the Motion. However, based on ILWU's argument, the Court construes the Motion as brought under Local Rule 7.3(h)(1)(A): seeking reconsideration of a court order because the Court committed a manifest error of the law or fact. After careful consideration, the Court **DENIES** ILWU's Motion.

ILWU cannot show that the Court's application of the law based on Ninth Circuit precedent is a manifest error of law. In its Motion for Reconsideration, ILWU cites for the first time to the

---

[53] Rule 54(b), the rule pertaining to judgment on multiple claims or involving multiple parties, states:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Parties may move pursuant to Rule 54(b) for entry of final or partial judgment. *E.g.*, *Puri v. Khalsa*, 2017 WL 6513055, No. 3:10–cv–01532–MO, at *1–2 (D. Or. Dec. 20, 2017) (describing motion brought under Rule 54(b) as a "Motion for Entry of Final Judgment"); *Aros v. Robinson*, No. CV-04-0306-PHX-SRB (LOA), 2006 WL 8441108, at *2 (D. Ariz. June 30, 2006) (noting motions for entry of partial judgment brought under Rule 54(b) "should be sparingly granted so as to avoid piecemeal appeals" (citation omitted)); *Cruz-Dominguez v. Cal. Dep't of Corr. & Rehab.*, No. 07-cv-01924 NC, 2012 WL 12919661, at *2 (N.D. Cal. Jan. 4, 2012) ("[W]hen multiple parties are involved in an action, the court may direct entry of final judgment as to one or more, but fewer than all, of the parties "only if the court expressly determines that there is no just reason for delay. . . . Partial judgments under Rule 54(b) are reserved for unusual cases where the risk of "scattershot disposition of litigation" is outweighed by the pressing need for an early judgment." (citations omitted)).

[54] Dkt. 86 at 1.

Federal Circuit case: *Ga.-Pac*. In *Ga.-Pac.*, the court affirmed the NLRB's ruling that grievances filed prior to issuance of a § 10(k) award were not coercive; the court also affirmed the NLRB's ruling that grievances filed after the issuance of a § 10(k) award could be coercive.[55] The court emphasized that "[n]ational labor policy favors the private settlement of jurisdictional disputes between two unions" and concluded that "as a general rule the filing of grievances is not coercive for the purposes of § 8(b)(4)(D)" and so finding would be contrary to the statutory objective of encouraging the private resolution of disputes.[56] The *Ga.-Pac.* court further distinguished between § 8(b)(4)(D) coercion and coercion in violation of § 8(b)(4)(B), also known as "secondary pressure."[57] The court described "secondary pressure" as "union coercion directed at a neutral employer with the object of inducing it to cease doing business with an employer with whom the union has a labor dispute," and noted that there is "no statutorily mandated labor policy of encouraging private settlement of disputes over secondary pressure comparable to the policy of encouraging private settlement of jurisdictional disputes."[58]

While subsequent courts have applied the *Ga.-Pac.* decision,[59] the Ninth Circuit has not definitely adopted its reasoning. Additionally, as Samson notes, it is not a party to the arbitration

---

[55] 892 F.2d at 132–33.

[56] *Id.* at 132.

[57] *Id.*

[58] *Id.* at 132–33.

[59] *E.g.*, *Local 30, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, AFL-CIO v. N.L.R.B.*, 1. F.3d 1419, 1426 n.10 (3rd Cir. 1993) ("[T]he mere filing of a grievance by a union before the Board issues its section 10(k) decision is not an unfair labor practice.") (citing *Ga.–Pac. Corp.*, 892 F.2d at 133); *see also* 48A Am. Jur. 2d *Labor and Labor Relations* § 1840 (2021) ("It is not coercive within the meaning of the [NLRA] for a union to file grievances against an employer seeking money payments in lieu of work performed by members of another

11

agreement or decision. Further, there is not presently a § 10(k) proceeding involving the underlying dispute; instead, Samson has filed a Complaint under Section 303. As the Court previously stated: "although . . . the NLRB has jurisdiction under § 10(k) of the NLRA to hear an unfair labor practice charged under § 8(b)(4)(D), the language of 29 U.S.C. § 158(b)(4)(ii)(D) does not limit the avenues for such grievances[;] Section 303 provides concurrent jurisdiction to this Court to hear Samson's claims."[60] A Section 303 lawsuit and the pursuit of administrative enforcement of Section 8(b)(4) coexist as independent avenues for a party wronged by a union's unfair labor practices."[61]

---

union, as long as the [NLRB] had not awarded that work to the other union in a jurisdictional dispute proceeding under the Act." (citing *Ga-Pac. Corp.*, 892 F.2d at 130)).

[60] Dkt. 85 at 20 (citing 29 U.S.C. § 187; *Pac. Maritime Ass'n v. NLRB*, 827 F.3d 1203, 1206 (9th Cir. 2016) ("[T]he Board is directed 'to hear and determine the dispute out of which such unfair labor practice shall have arisen.'") (quoting 29 U.S.C. § 160(k)); *see also* Case No. 3:20-cv-00248-TMB, Dkt. 1-7 at 3 ("The Board may proceed with a determination of a dispute under Section 10(k) . . . if there is reasonable cause to believe that Section 8(b)(4)(D) has been violated.").

[61] *Am. Pres. Lines, Ltd. v. ILWU, AKLD*, 721 F.3d 1147, 1156 (9th Cir. 2013). As the Supreme Court set out in *ILWU v. Juneau Spruce Corp.*;

> Section 8(b)(4)(D) and [Section] 303(a)(4) are substantially identical in the conduct condemned. Section 8(b)(4)(D) gives rise to an administrative finding; [Section] 303(a)(4), to a judgment for damages. The fact that the two sections have an identity of language and yet specify two different remedies is strong confirmation of our conclusion that the remedies provided were to be independent of each other. Certainly there is nothing in the language of [Section] 303(a)(4) which makes its remedy dependent on any prior administrative determination that an unfair labor practice has been committed. Rather, the opposite seems to be true. For the jurisdictional disputes proscribed by [Section] 303(a)(4) are rendered unlawful 'for the purposes of this section only,' thus setting apart for private redress, acts which might also be subjected to the administrative process. . . . These provisions, limiting and curtailing the administrative power, find no counterpart in the provision for private redress contained in [Section] 303(a)(4). Section 303(a)(4) . . . 'retains simply a right of suit for damages against any labor organization which undertakes a secondary boycott or a jurisdictional strike.' The right to sue in the courts is clear, provided the pressure on the employer falls in the prescribed category which, so far as material here, is forcing or requiring him to assign particular work 'to employees

Accordingly, ILWU has failed to show the Court applied the incorrect standard to Samson's claim and committed a manifest error of law in partially denying its Motion to Dismiss Samson's Complaint.[62] Accordingly, ILWU's Motion is **DENIED**.

## V. CONCLUSION

ILWU has not shown that there is a manifest error of fact or law in the Court's decision. Accordingly, for the foregoing reasons, the Motion for Reconsideration at Docket 86 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 13th day of August, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

in a particular labor organization' rather than to employees 'in another labor organization' or in another 'class.'

342 U.S. 237, 243–46 (1952); *see also N.L.R.B. v. Radio & Television Broad. Eng. Union*, 364 U.S. 573, 585 (1961).

[62] *See Am. Pres. Lines, Ltd;* 721 F.3d at 1156; *Juneau Spruce Corp.*, 342 U.S. at 243–46; *see also* Fed. Lab. Law: NLRB Prac. § 13:2, *Jurisdictional dispute as unfair labor practice* (2021) ("In general, the conduct outlawed under Section 8(b)(4)(D) is the same as that outlawed in Section 8(b)(4)(A) and (B), namely: (1) strikes, boycotts, or inducements thereof, or (2) threats, coercion or restraint.") (citing 29 U.S.C.A. § 158(b)(4)).