IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SAMSON TUG & BARGE, CO. INC.,

                                 Plaintiff,

v.

INTERNATIONAL LONGSHORE &
WAREHOUSE UNION, ALASKA
LONGSHORE DIVISION, and
ILWU UNIT 222,

                                 Defendants.

Case No. 3:20-cv-00108-TMB
Case No. 3:20-cv-00248-TMB
Consolidated

**ORDER ON DEFENDANTS' MOTION
FOR CERTIFICATION & STAY
(DKT. 107)**

## I.     INTRODUCTION

The matter comes before the Court on Defendants International Longshore and Warehouse Union, Alaska Longshore Division, and ILWU Unit 222's (collectively "ILWU") Motion for Certification and Stay Under 28 U.S.C. § 1292(b) (the "Motion").[1] Plaintiff Samson Tug and Barge, Co. Inc. ("Samson") opposes the Motion.[2] The Court held oral argument on December 7, 2021.[3] For the reasons stated below, the Court **DENIES** the Motion.

## II.    BACKGROUND

The factual background of this case is set forth in detail at Dockets 81 and 82 and will not be repeated here.[4]

---

[1] Dkt. 107 (Motion); Dkt. 112 (Reply); Dkts. 113, 114 (Declarations).

[2] Dkt 111 (Opposition).

[3] Dkt. 124 (Minute Entry).

[4] Dkt. 81 (Order Denying Preliminary Injunction); 82 (Order on ILWU's Motion to Dismiss Petition); *see also* Dkt. 85 (Order on ILWU's 12(b)(6) Motion to Dismiss).

1

A. *Motion to Dismiss and Motion for Reconsideration*

At issue in ILWU's underlying motion to dismiss and motion for reconsideration is whether Samson's Complaint plausibly alleges ILWU committed an unfair labor practice ("ULP") by "threaten[ing], coerc[ing], or restrain[ing]" Samson for the purpose of forcing Samson to assign particular work to ILWU members instead of members of another labor organization, in violation of § 8(b)(4)(D)[5] of the National Labor Relations Act ("NLRA").[6] ILWU's position in each motion is that Samson's Complaint fails to allege coercion as a matter of law and, thus, should be dismissed under Federal Rule of Civil Procedure 12(b)(6).[7]

In the Complaint, Samson alleges ILWU and Samson's landlord, Matson, "participated in an arbitration pursuant their CBA" in which "the Coast Arbitrator issued an award that purports to require Samson to utilize ILWU represented individuals to operate any cargo handling equipment at Samson's Womens Bay terminal instead of Samson's MEBA represented employees who have traditionally done this work."[8] Samson further alleges that "[b]ased on the Coast Arbitrator's decision (Exhibit 4),[9] the ILWU has made a number of demands on Samson, a stranger to the

---

[5] 29 U.S.C. § 158(b)(4)(ii)(D). The NLRA subsection at issue here is cited by the parties and by courts as either § 8(b)(4)(D) or § 8(b)(4)(ii)(D), interchangeably.

[6] Samson has one damages claim remaining under Section 303 of the Labor Management Relations Act. Case No. 3:20-cv-00248-TMB, Dkt. 1 (Complaint). Section 303 provides a private cause of action in district court to a party injured by a union's ULP as defined in 29 U.S.C. § 158(b)(4), which is § 8(b)(4) of the NLRA. 29 U.S.C. § 187. Here, Samson alleges ILWU committed the ULP defined in § 8(b)(4)(D): threatening, coercing, or restraining an employer with the goal of forcing it to assign work to a particular union instead of another.

[7] *See generally* Dkts. 38, 39 (12(b)(6) Motion to Dismiss); Dkt. 86 (Motion for Reconsideration); Dkt. 107.

[8] Case No. 3:20-cv-00248-TMB, Dkt. 1 ¶¶ 14, 16.

[9] The arbitration decision is attached to Samson's Complaint. Case No. 3:20-cv-00248-TMB, Dkt. 1-5. In the decision, the arbitrator interpreted the language in an agreement between ILWU and Matson as entitling ILWU to operate cargo handling equipment on facilities owned by Matson,

Matson-ILWU collective bargaining agreement."[10] Those demands include, according to Samson, (1) "that Matson apply the Coast Arbitrator's decision by terminating Samson's Womens Bay lease thereby canceling Samson's occupancy of its terminal at Womens Bay if Samson does not use ILWU represented individuals for its Womens Bay cargo operations or pay ILWU's time in lieu charges,"[11] (2) that "Samson use ILWU represented individuals for cargo operations at other ports and locations including the waterside operations at Pier II, a separate Kodiak terminal,"[12] and (3) "that Matson charge Samson for the time card labor hours submitted by ILWU for cargo handling work done by Samson's MEBA represented individuals at Womens Bay."[13]

Construing these allegations as true, the Court found in its Order on the motion to dismiss that Samson alleges sufficient facts to state a claim for damages under Section 303 of the Labor Management Relations Act.[14] The Court also concluded that "Samson can state a claim for a ULP on the basis that ILWU pursued an arbitration decision for an unlawful purpose."[15]

ILWU moved for reconsideration, arguing the Court applied the wrong standard for coercion because, as a matter of law, "a union does not violate NLRA § 8(b)(4)(ii)(D) by filing

---

even where Matson is a passive owner. *Id.* at 7–9. The arbitrator concluded the agreement "is required to be enforced" but did not specify how the agreement was to be enforced. *Id.* at 9. The arbitration decision did not, on its face, order Matson (or Samson, which was not a party to the arbitration) to pay time-in-lieu payments to ILWU.

[10] Case No. 3:20-cv-00248-TMB, Dkt. 1 ¶ 17.

[11] *Id.* ¶ 19.

[12] *Id.* ¶ 20.

[13] *Id.* ¶ 23.

[14] Dkt. 85 at 19–21.

[15] *Id.* at 19.

arguably meritorious work assignment grievances prior to the issuance of the [National Labor Relations] Board's 10(k) determination."[16] According to ILWU, pursuing an arguably meritorious grievance through arbitration *cannot* be coercive unless the National Labor Relations Board ("NLRB") has already awarded the disputed work to a different union through a decision under § 10(k) of the NLRA.[17] In making this argument, ILWU relied on authority from outside of this circuit; the Ninth Circuit has not yet weighed in on the issue.[18] Primarily for that reason, the Court denied reconsideration.[19] ILWU then filed the instant Motion.

B. *Motion for Certification and Stay*

ILWU now asks the Court to allow it to seek an interlocutory appeal by amending the Order denying reconsideration, pursuant to § 1292(b), to certify that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[20] ILWU also asks for a stay pending appeal.[21]

According to ILWU, the "controlling question of law" is as follows:

> [W]hether "Samson can state a claim for a ULP on the basis that ILWU pursued an arbitration decision for an unlawful purpose" under NLRA § 8(b)(4)(ii)(D) in the absence of a NLRA § 10(k) work assignment order assigning the work awarded in the arbitration to another workforce and in the absence of any allegations that ILWU struck, threatened to strike, picketed, threatened to picket, or engaged in any

---

[16] Dkt. 107 at 3 (internal quotations omitted).

[17] *See* Dkt. 86 at 4–7.

[18] *Id.*

[19] Dkt. 103.

[20] Dkt. 107 at 2 (quoting 28 U.S.C. § 1292(b)).

[21] *Id.*

4

'self-help' to coerce [Samson] or non-party [Matson] to assign the work to ILWU longshoremen.[22]

In other words, ILWU argues there is substantial ground for disagreement as to whether Samson can state a claim for coercion on the basis that ILWU pursued arbitration without either (1) a contrary § 10(k) decision, or (2) alleging ILWU struck, threatened to strike, picketed, threatened to picket, or engaged in self-help.[23] ILWU relies largely on the D.C. Circuit's decision in *Georgia-Pacific Corp. v. NLRB*,[24] which it cited for the first time in its motion for reconsideration, to establish a substantial ground for difference of opinion on the issue.[25] ILWU asserts, "the NLRB and every Court of Appeals to consider the question has found no violation of NLRA Section 8(b)(4)(D) prior to issuance of a contrary NLRA Section 10(k) work assignment order and in the absence of striking, picketing, engaging in 'self-help,' or threatening to engage in such conduct."[26] ILWU also claims that its stated question of law is controlling and that an appeal would materially advance the ultimate termination of the litigation because the issue is dispositive: if, as a matter of law, pursuing arbitration is not coercive absent a contrary § 10(k) determination and absent any allegation of striking or similar conduct, Samson has failed to state a claim.[27]

---

[22] *Id.* at 4 (quoting Dkt. 85).

[23] *Id.*

[24] 892 F.2d 130 (D.C. Cir. 1989) (per curiam).

[25] Dkt. 107 at 5.

[26] *Id.*

[27] *Id.*

### C. Samson's Opposition

Samson responds that the "controlling question" at issue in the Order denying reconsideration is, in fact, whether it plausibly alleged ILWU committed a ULP—i.e., whether it plausibly alleged ILWU engaged in "coerc[ion]."[28] Samson argues it has alleged ILWU was coercive not only by pursuing arbitration, but also by unfairly leveraging the arbitrator's decision: "Samson is alleging that ILWU used the arbitration process as a step in its quest to have Matson use its vastly superior economic power and leverage as landlord to force Samson to hire ILWU workers."[29] As Samson said in its opposition to ILWU's motion for reconsideration, "ILWU also took actions outside of the arbitration with the same unlawful objective of coercing Samson."[30] Thus, according to Samson, the legal question ILWU identifies is not controlling or dispositive. Rather, "ILWU's formulation of the 'controlling question' is self-serving and not particularly relevant to the actual claims made by Samson."[31]

Samson then argues there is no substantial ground for difference of opinion because the cases ILWU cites are distinguishable. Samson believes *Georgia-Pacific* has no bearing in a Section 303 suit primarily because it did not involve one; rather, *Georgia-Pacific* was on appeal from an NLRB decision.[32] As to ILWU's limited definition of coercion, Samson argues that "[c]ontrary to the specific definitions ILWU would attach to 'coercion' the courts have recognized

---

[28] Dkt. 111 at 8.

[29] *Id.*

[30] Dkt. 98 at 8 (Opposition to Motion for Reconsideration).

[31] Dkt. 111 at 8.

[32] *Id.* at 13–14.

that the concept of coercion is "nonspecific, indeed vague."[33] It also asserts this argument is new and unsupported by authority.[34]

### III. LEGAL STANDARD

A. *Certification Under 28 U.S.C. § 1292(b)*

Pursuant to 28 U.S.C. § 1292(b), a district court "shall" certify an order for appeal if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[35] The statute, therefore, imposes three requirements for certification: (1) a controlling question of law, (2) substantial grounds for difference of opinion as to that question, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation.[36] If a court believes these conditions are met but did not "so state in writing"[37] as is required by § 1292(b), it "may amend its order, either on its own or in response to a party's motion, to include the required permission or statement."[38]

---

[33] *Id.* at 18 (quoting *Int'l Longshoremen's & Warehousemen's Union v. NLRB*, 884 F.2d 1407, 1413 (D.C. Cir. 1989)).

[34] *Id.* at 6, 20.

[35] 28 U.S.C. § 1292(b).

[36] *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981); *Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS, 2014 WL 2986662, at *2 (D. Alaska July 1, 2014).

[37] 28 U.S.C. § 1292(b).

[38] Fed. R. App. P. 5(a)(3).

Overall, the Ninth Circuit has cautioned that § 1292(b) is "to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation" and "was not intended merely to provide review of difficult rulings in hard cases."[39]

i. Controlling Question of Law

A question of law is "controlling" when "resolution of the issue on appeal could materially affect the outcome of litigation in the district court."[40] The Ninth Circuit has said that "[w]hile Congress did not specifically define what it meant by 'controlling,' the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation."[41]

ii. Substantial Ground for Difference of Opinion

"A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution."[42] Courts typically find a substantial ground for difference of opinion where (1) "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point," (2) "complicated questions arise under foreign law, or" (3) "novel and difficult questions of first impression are presented."[43] A party's disagreement with a court's

---

[39] *U. S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam); *see also In re Cement Antitrust Litig.*, 673 F.2d at 1026.

[40] *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

[41] *Id.*

[42] *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *Shell Gulf of Mexico, Inc. v. Ctr. for Biological Diversity, Inc.*, No. 3:12-cv-00096-RRB, 2012 WL 12871660, at *2 (D. Alaska Sept. 13, 2012).

[43] *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

8

decision, however strong, is not enough.[44] Rather, the party must establish that "fair-minded jurists might reach contrary conclusions" on the issue.[45]

      iii. <u>Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation</u>

Finally, an appeal must "possess the possibility of materially advancing the litigation."[46] In evaluating this requirement, courts consider the impact of a reversal by the court of appeals.[47] For example, courts have found an appeal "may materially advance" the litigation if reversal would take defendants or claims out of the case[48] or would terminate the litigation altogether.[49]

### IV. DISCUSSION

The Court concludes that its Order denying reconsideration does not meet the requirements for certification and **DENIES** the Motion accordingly.

  B. *Requirement Two: Substantial Ground for Difference of Opinion*

Beginning with the second requirement for certification, the Court concludes there might be "substantial ground for difference of opinion" as to whether a plaintiff can state a Section 303 claim for coercion under § 8(b)(4)(D) on the basis that a union pursued arbitration without a contrary § 10(k) decision. The Court has said that "Samson can state a claim for a ULP on the

---

[44] *Id.*

[45] *Reese*, 643 F.3d at 688.

[46] *Id.*

[47] *Id.*

[48] *Id*.

[49] *Shell Gulf of Mexico, Inc.*, 2012 WL 12871660, at *3.

basis that ILWU pursued an arbitration decision for an unlawful purpose."[50] The Ninth Circuit has not weighed in on the issue. The NLRB and courts outside of this circuit have held, albeit under different circumstances, that merely pursuing an arguably meritorious grievance is not coercive without a contrary § 10(k) determination.[51] While those decisions might be distinguishable, they establish there are likely grounds for difference of opinion on the issue.

However, whether a union can be coercive by pursuing arbitration without a contrary § 10(k) decision is only part of ILWU's purported controlling question. ILWU also asserts—in an apparent attempt to ensure the question is dispositive—that coercion is limited to an enumerated list of acts: (1) pursuing arbitration *after* the NLRB issues a § 10(k) decision awarding the work to another union, (2) striking, (3) picketing, (4) threatening to strike or picket, or (5) using self-help. ILWU raised this argument for the first time in this Motion, and the issue was not addressed in the Order denying reconsideration.[52] In short, the Court has never considered, because ILWU has not—until now—asked the Court to consider, whether "coercion" under § 8(b)(4)(D) is so limited. Because the issue was not considered, or raised, in the Order underlying the Motion, it cannot properly be certified for appeal.[53] "As the text of § 1292(b) indicates," a court of appeals may

---

[50] Dkt. 85 at 19.

[51] *See Ga.-Pac.*, 892 F.2d at 133.

[52] ILWU claims it "has made this argument consistently throughout the briefing on the motion to dismiss as well as at oral argument on the motion," citing several spans of pages in its briefing. Dkt. 112 at 3 (citing Dkt. 39 at 14–16, 24–25; Dkt. 46 at 15–20; Dkt. 63 at 15–17, n.4; Dkt 86 at 3–5). However, ILWU has not quoted any portions of its briefing in which it makes the argument explicitly, and the Court has found none. *See id.* While ILWU has previously asserted that Samson has failed to allege coercion and has provided striking and picketing as examples of coercion, it has not, until now, advocated for a limited definition of coercion.

[53] *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

10

address only "issue[s] fairly included within the certified order because it is the *order* that is appealable."[54]

Even assuming this was not a new argument from ILWU, the Court concludes there is no substantial ground for difference of opinion as to whether coercion is limited to ILWU's enumerated list of acts. The Ninth Circuit has adopted a broad definition of "coerce" as used in § 8(b)(4): "[W]hen Congress used 'coerce' in Section 8(b)(4)(B) it did not intend to proscribe only strikes or picketing, but intended to reach any form of economic pressure of a compelling or restraining nature."[55] Of course, this particular decision involved subsection (B), whereas Samson invokes subsection (D). But the Ninth Circuit has applied this broad definition of "coerce" to subsection (D) as well:

> Section 8(b)(4)(ii)(D) of the NLRA makes it an unfair labor practice for a union to "threaten, coerce, or restrain any person" with the objective of "forcing or requiring any employer to assign particular work to employees in a particular labor organization." We have interpreted the scope of section 8(b)(4)(ii) pragmatically, looking to the "coercive nature of the conduct, whether it be picketing or otherwise," and finding an unfair labor practice when there is "proof which if viewed realistically tends to show" a coercive effect.[56]

Applying this broad definition of "coerce" to subsection (D) makes sense. First, the word "coerce" is used only once in § 8(b)(4) and modifies both subsections (B) and (D).[57] Second, the rationale behind the Circuit's broad definition applies equally to both subsections. The Ninth Circuit has explained, "Congress enacted Section 8(b)(4)(B) and Section 8(e) to shield unoffending employers

---

[54] *Id.* (internal quotations omitted) (emphasis in original); *see also Couch*, 611 F.3d at 634.

[55] *Associated Gen. Contractors of Cal., Inc. v. NLRB*, 514 F.2d 433, 438 (9th Cir. 1975).

[56] *Int'l Longshoremen's & Warehousemen's Union, Loc. 32 v. Pac. Mar. Ass'n*, 773 F.2d 1012, 1018 (9th Cir. 1985) (internal citations omitted).

[57] 29 U.S.C. § 158(b)(4)(ii).

11

from union pressures designed to involve them in disputes not their own. The other subsections of Section 8(b)(4) were similarly intended to protect employers in the position of neutrals between contending parties."[58]

The Court is aware of only one justification for treating coercion differently under these subsections: that subsection (D) must be read in light of § 10(k), that § 10(k) explicitly incentivizes private settlement, and that there is no such incentive under subsection (B). The D.C. Circuit used this rationale in *Georgia-Pacific* to justify why, in its view, a union can be coercive by pursuing arbitration absent a § 10(k) decision for the purposes of subsection (B) but not subsection (D).[59] The court was hesitant to disincentivize arbitration and settlement in the context of jurisdictional disputes.[60] But that rationale does not justify limiting coercion under subsection (D) to ILWU's enumerated list of acts. Such a limitation is unlikely to incentivize private settlement and, instead, might leave a party without a remedy where a union has applied "economic pressure of a compelling or restraining nature" to coerce an employer into using its workers instead a different union.[61]

In addition, ILWU's limited definition of coercion is found nowhere in the text of the statute. The Court will not read an extra-textual limitation into the language of § 8(b)(4) without a

---

[58] *Associated Gen. Contractors of Cal., Inc.*, 514 F.2d at 437 (emphasis added); *see also NLRB v. Fruit & Vegetable Packers & Warehousemen, Loc. 760*, 377 U.S. 58, 68 (1964) ("[T]he prohibition of § 8(b)(4) is keyed to the coercive nature of the conduct, whether it be picketing or otherwise.").

[59] *See Ga.-Pac.*, 892 F.2d at 132–33.

[60] *Id.*

[61] *Associated Gen. Contractors of Cal., Inc.*, 514 F.2d at 438.

12

clear justification and contrary to Ninth Circuit precedent.[62] Again, the Ninth Circuit defines "coerce" broadly to include "any form of economic pressure of a compelling or restraining nature."[63] Samson alleges ILWU applied such economic pressure outside of the arbitration.[64] The Court concludes there is no substantial ground for difference of opinion as to whether ILWU's behavior outside of the arbitration is plausibly coercive. Accordingly, the Court will assume for the purposes of analyzing the first and third requirements for certification, that the operative legal question is whether a union can be coercive by pursuing arbitration absent a § 10(k) decision. That is the question the Court considered in its Order denying reconsideration. It is also the question not directly answered by the Ninth Circuit and about which reasonable jurists might disagree.

C. *Requirements One and Three: Controlling Question / Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation*

Turning to the first and third requirements for certification, the Court concludes the question of whether a union can be coercive by pursuing arbitration absent a § 10(k) decision is not "controlling" and that an interlocutory appeal of the Order denying reconsideration will not

---

[62] At oral argument, ILWU cited *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261 (1964), for the proposition that coercion is limited to strikes or threats to strike. *Carey* involved a different question than the one at issue here—namely, whether to compel an employer to arbitrate. While *Carey*'s rationale in answering that question might be inconsistent with the Ninth Circuit's definition of "coerce," it is not the role of a district court to make that decision. In any event, ILWU has not argued that *Pac. Mar. Ass'n* was wrongly decided. And if it had, certification under § 1292(b) does not appear to be the proper vehicle for a party to challenge whether Ninth Circuit precedent is inconsistent with preexisting Supreme Court caselaw. *Cf. Couch*, 611 F.3d at 633 (listing types of issues appropriate for certification; noting, "just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion") (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

[63] *See Associated Gen. Contractors of Cal., Inc.*, 514 F.2d at 437; *see also Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1192 (2d Cir. 1976) ("[T]he use of a wide range of economic sanctions is proscribed by § 8(b)(4)(ii).").

[64] *See* Case No. 3:20-cv-00248-TMB, Dkt. 1 ¶¶ 19–23.

13

Case 3:20-cv-00108-TMB   Document 129   Filed 01/10/22   Page 13 of 15

"materially advance the ultimate termination of the litigation." Because these requirements are similar as applied here, the Court will address them together.

ILWU argues that the Order meets the first and third requirements for certification because the legal question it identifies is dispositive. The Court disagrees. Here, Samson alleges ILWU was coercive not only by filing and prosecuting a grievance but also by coercively leveraging the arbitration decision outside of the arbitration. And the Court relied in part on Samson's allegations involving conduct outside of the arbitration to conclude Samson has sufficiently pleaded coercion.[65] Accordingly, if the Ninth Circuit were to conclude that, as a matter of law, ILWU was not coercive by pursuing arbitration, its conclusion would not require dismissal. Nor would it take defendants or claims out of the case.[66] Thus, an interlocutory appeal would not "avoid protracted and expensive litigation."[67] And to the extent an interlocutory appeal might impact Samson's theory of coercion moving forward, the Court can use jury instructions to ensure that if this case is ultimately appealed, the Ninth Circuit can evaluate the theory of coercion upon which the jury made its decision. Accordingly, the Court finds that the Order denying reconsideration does not meet the requirements for certification under § 1292(b). The Court **DENIES** the Motion on that basis.

Because the Court will not certify its Order for appeal, it need not reach whether to grant a stay.

---

[65] *See, e.g.*, Dkt. 85 at 19 ("Construing Samson's allegations as true at this stage, at its heart, this appears to be a jurisdictional dispute between work allocated to two unions, ILWU and MEBA, and an attempt by ILWU to exert leverage over Samson to cooperate at another location, Pier II, and use ILWU labor.").

[66] *See Reese*, 643 F.3d at 688.

[67] *See U. S. Rubber Co.*, 359 F.2d at 785.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion at Docket 107.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of January, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE