IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

*Samson Tug and Barge Co., Inc. v. International Longshore and Warehouse Union; International Longshore and Warehouse Union, Alaska Division; and ILWU, Unit 222*
Consolidated Case Nos. 3:20-cv-00108-TMB, 3:20-cv-00248-TMB

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

This matter comes before the Court on Plaintiff Samson Tug and Barge Company, Inc.'s ("Samson") Motion for Reconsideration of the Court's Order at Docket 188[1] (the "Motion"), which granted Defendant International Longshore and Warehouse Union's (the "International") Motion to Dismiss the Second Amended Complaint as to the claims against it (the "Motion to Dismiss").[2] Samson argues that the Court applied the incorrect legal standard in assessing whether Samson plausibly alleged an agency relationship between the International and its affiliates (the "Alaska Defendants"), and that applying Samson's proposed standard would allow the Court to draw reasonable inferences that the International ratified the Alaska Defendants' conduct.[3] Pursuant to Local Civil Rule 7.3(h)(3), the Court requested a response from the International.[4] The International opposes the Motion.[5] For the reasons below, the Motion is **DENIED**.

In the Order granting the Motion to Dismiss (the "Order"), the Court concluded that the allegations in Samson's Second Amended Complaint ("SAC") were insufficient to "plausibly show[] that the International may be held liable for the Alaska Defendants' actions."[6] The Court relied primarily on two cases: (1) *Carbon Fuel Company v. United Mine Workers of America*, where the Supreme Court rejected the argument that an international union was vicariously liable "for its failure to take certain steps in response to the actions of the local";[7] and (2) *Moore v. Local Union 569 of International Brotherhood of Electrical Workers*, where the Ninth Circuit held that an international union may be vicariously liable when it "instigated, supported, ratified or encouraged [its affiliate's] activities."[8] Reasoning that this line of cases shows that "some degree of active involvement or an affirmative act of assent" is required to establish a ratification-based agency

---

[1] Dkt. 189 (Motion for Reconsideration).
[2] Dkt. 169 (Motion to Dismiss); Dkt. 170 (Memorandum in Support of Motion to Dismiss); Dkt. 171 (Opposition); Dkt. 174 (Reply).
[3] Dkt. 189 at 2–5.
[4] Dkt. 190 (Text Order).
[5] Dkt. 191 (Response in Opposition).
[6] Dkt. 188 at 10.
[7] 444 U.S. 212, 217–18 (1979).
[8] 989 F.2d 1534, 1543 (9th Cir. 1993); Dkt. 188 at 10–11.

1

relationship,[9] the Court determined that the allegations in the SAC did not raise a reasonable inference of more than "passive[]" or "indirect[]" endorsement of the Alaska Defendants' conduct.[10] In doing so, the Court rejected Samson's argument that it had plausibly established an agency relationship by alleging that that the International had attended an arbitration and had been copied on an email from the Alaska Defendants to the union whose employees Samson uses.[11] Finally, the Court rejected Samson's argument that the standard for ratification by inaction, set forth in the Restatement (Third) of Agency ("Restatement"), applies "in the context of an international union's liability for the actions of its affiliates," because applying this standard would supplant the holdings of *Carbon Fuel* and its progeny, including *Moore*.[12]

Samson now moves for reconsideration, contending that the Court erred by: (1) declining to use the standard set forth in *Iron Workers District Council of Pacific Northwest v. National Labor Relations Board*[13] to analyze the alleged agency relationship between the International and the Alaska Defendants; (2) interpreting *Carbon Fuel* and its progeny to foreclose application of the Restatement's standard for ratification by inaction in this context; and (3) concluding that Samson failed to allege facts plausibly demonstrating that an agency relationship existed between the International and the Alaska Defendants.[14]

A motion to reconsider is an "extraordinary remedy, to be used sparingly and in the interests of finality and conservation of judicial resources."[15] Under Local Civil Rule 7.3(h), the Court "will ordinarily deny a motion for reconsideration absent a showing of one of the following: (A) manifest error of the law or fact; (B) discovery of new material facts not previously available; or (C) intervening change in the law."[16] Samson's request for reconsideration is based only on the ground that the Court committed a "manifest error of law or fact."[17]

First, the Court did not commit manifest error by holding that *Moore*, rather than *Iron Workers*, supplies the correct standard to determine whether an international union may be vicariously liable for its affiliate's conduct under the agency theory alleged in the SAC.[18] *Iron Workers* provides that "[a] union will not be held accountable for the conduct of others unless the union 'instigated,

---

[9] *See* Dkt. 188 at 12–13 n.79 (compiling cases demonstrating courts' wholesale rejection of "an international or national union's liability for their affiliates' conduct under an agency theory premised only on the international or national union's passive involvement or failure to disapprove of the relevant conduct").
[10] *Id.*
[11] *Id.*
[12] *Id.* at 14–15.
[13] 913 F.2d 1470, 1477 (9th Cir. 1990).
[14] Dkt. 189 at 2–5.
[15] *Big State Logistics, Inc. v. Gov't Servs. Corp.*, No. 4:13-cv-00029, 2014 WL 12526313, at *1 (D. Alaska March 28, 2014); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).
[16] L.Civ.R. 7.3(h)(1).
[17] *See* Dkt. 189.
[18] *See* Dkt. 188 at 7 n.65.

2

authorized, solicited, ratified, condoned, or adopted' the ... unlawful conduct."[19] *Moore*, meanwhile, holds that an international union may be vicariously liable for an affiliate's conduct if it "instigated, supported, ratified or encouraged the [affiliate's] activities."[20] Samson asserts that these cases involve the same issue: "[w]hether a union can be liable for the acts of its local affiliates."[21] However, as noted in the Order, *Iron Workers* is distinct in key ways: it "involved a district council's joint liability," as opposed to an international union's vicarious liability, "for the local's unlawful conduct."[22] More specifically, the *Iron Workers* court concluded that it was not error to hold a district council jointly liable with its local union when the district council—via its president—*actually participated* in the unlawful conduct at issue.[23] Joint liability "is established based upon a party's actions taken in concert with another [liable party]," and is analytically unlike vicarious liability, which imposes an "indirect responsibility" for another's actions.[24] For these reasons, and because the issue in *Moore* was precisely the same as the issue in this case, the Court declines to reconsider the Order on this basis.

Second, the Court did not commit manifest error by declining to rely on the Restatement's standard for ratification by inaction because doing so would "directly conflict" with *Carbon Fuel* and its progeny.[25] As the Court observed, these cases predicate an international union's liability under a ratification-based agency theory on some "active involvement or an affirmative act of assent," and not simply inaction in the face of an affiliate's unlawful conduct.[26] Samson maintains that the Court "misread[] *Carbon Fuel*" to "impose a stricter standard than the Restatement," and that *Carbon Fuel* "did not impose any requirements" beyond those of the common law of agency "at all."[27] But Samson's argument is wholly inconsistent with *Carbon Fuel*'s statement that, in light of "Congress' clear statement of the limits of an international union's legal responsibility for the acts of one of its [affiliates], it would be anomalous to hold that an international is nonetheless liable for its failure to take certain steps in response to actions of the [affiliate]."[28] Applying the Restatement's standard for ratification by inaction would allow Samson to hold the International liable simply for failing to object to the Alaska Defendants' allegedly unlawful conduct. This

---

[19] 913 F.2d at 1477 (quoting *Nat'l Lab. Rels. Bd. v. Miramar of Cal., Inc.*, 601 F.2d 422, 425 (9th Cir. 1979)).
[20] 989 F.2d at 1543.
[21] Dkt. 189 at 3.
[22] Dkt. 188 at 9 n.65.
[23] 913 F.2d at 1477.
[24] *Cf.* 1 JOEL W. MOHRMAN & ROBERT J. CALDWELL, HANDLING BUSINESS TORT CASES § 3:1 (2015 ed., June 2020 Update) ("Vicarious liability is liability for the tort of another. It is an indirect responsibility imposed by the law and is distinguishable from direct liability, which is established based upon a party's own acts, and joint liability, which is established based upon a party's actions taken in concert with another tortfeasor."); RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT LIAB. § 13 cmt. c (AM. L. INST. 2000). ("The vicariously liable party has not committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts.").
[25] *See* Dkt. 188 at 14–15.
[26] *Id.* at 15.
[27] Dkt. 189 at 4.
[28] 444 U.S. at 217–18.

3

would render the Supreme Court's holding in *Carbon Fuel* meaningless.[29] The Court therefore declines to reconsider the Order on this basis.[30]

And third, the Court did not commit manifest error by finding that Samson did not allege facts sufficient to plausibly establish an agency relationship between the International and the Alaska Defendants.[31] Samson emphasizes that "agency is inherently a factual inquiry," and reiterates its argument that the Court can draw the "reasonable inference" that an agency relationship was created from two facts: that (1) President Willie Adams and an Executive Board member of the International "travel[ed] thousands of miles to attend an arbitration"; and (2) President Adams and two other International officers were copied on an email demonstrating the Alaska Defendants' unlawful conduct.[32] In support, Samson cites for the first time a Third Circuit case brought under the Racketeer Influenced and Corrupt Organizations Act,[33] where plaintiff health management companies alleged that members of two unions had unlawfully "committed sabotage" and that the unions "either authorized these actions or ratified them."[34] The appellate court held that the unions' "failure to investigate" suspects could "theoretically" support a claim that the unions ratified the alleged acts of sabotage.[35] But like *Iron Workers*, this case is inapposite because it involves a different issue: unions' liability for the unlawful actions of their *members*.[36] This issue is tied to a legal standard that allows for a union's liability where it "participated . . . by knowing tolerance in further [unlawful] acts."[37] This standard does not apply when evaluating an international union's liability for the actions of its affiliates.[38] For this reason, and because the Motion does not otherwise persuade the Court that it committed manifest error, the Court declines to reconsider the Order on this basis.[39]

---

[29] *See* Dkt. 188 at 12–13 n.79.
[30] Even if the Court agreed with Samson's Restatement-based argument, it would still decline to reconsider the Order because Samson does not challenge the Court's conclusion that, in any case, "the allegations in the SAC [are] insufficient to demonstrate ratification because they do not include the critical allegation that 'the International has any authority or control over the Alaska Defendants as a general matter.'" *See* Dkt. 188 at 15 n.89 (citing Dkt. 174 at 6; RESTATEMENT (THIRD) OF AGENCY § 4.01 cmt. f (AM. L. INST. 2006)).
[31] *See* Dkt. 188 at 10–15.
[32] *See* Dkt. 189 at 6–7.
[33] 18 U.S.C. § 1961 *et seq.*
[34] *Care One Mgmt. LLC v. United Healthcare Workers E.*, 43 F.4th 126, 139 (3d Cir. 2022)
[35] *Id.* at 144–45.
[36] *See id.* at 139–41.
[37] *Id.* at 143.
[38] *Compare id.* (holding that to establish ratification of union members' unlawful conduct, plaintiffs were required to prove "either that the union approved the violence which occurred, or that it participated actively *or by knowing tolerance in further acts* which were in themselves actionable under state law or intentionally drew upon the previous violence for their force") (emphasis added) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 739 (1966)), *with Moore*, 989 F.2d at 1543 (holding that to establish ratification of an affiliate's unlawful conduct, plaintiff was required to show that the international union "instigated, supported, ratified or encouraged the [affiliate's] activities").
[39] *See* Dkt. 188 at 11.

Accordingly, the Motion at Docket 188 is **DENIED**.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: May 4, 2023.